## DRISCOLL VS. DAMP.

A. paid B. part of a claim for work done. Afterwards in an action by B, for the value of said work, in which A. answered but was not present at the trial, although the evidence showed clearly that the original demand was only $24.95, and payment of $10 thereon was admitted by B., judgment was rendered for $24.95, damages, and the whole amount thereof collected on execution. *Held*, that A. could not maintain an action for the amount of the first payment, said judgment being conclusive that the sum for which it was rendered was then actually due and unpaid.

*Woodward v. Hull*, 6 Wis., 143, distinguished.

APPEAL from the Circuit Court for *Dodge* County.

This action was brought by *Margaret Driscoll* against *Simon P. Damp* for money had and received of her by him, amounting to $15, and interest from October 8th, 1859. The defendant pleaded in bar a judgment previously rendered against the plaintiff at the suit of *Simon P. Damp* and Andrew J. Damp, for $24.95 damages, which, he alleged, included the claim in question. On the first trial, judgment was rendered in favor of the plaintiff for the amount of her claim. The supreme court reversed this decision, and remanded the cause for a new trial. 6 Wis., 106. On the second trial, the evidence and admissions of the parties showed the following facts: Some time in 1859, *Simon P. Damp* and Andrew J. Damp, as partners, did work for *Mrs. Driscoll* to the value of $24.95. In October, 1859, she paid said *Simon* either ten or fifteen dollars in part settlement of said claim. In November following, said *Simon P.* and Andrew J. Damp sued before a justice for what was due them for said work. The complaint laid the damages at $100. *Mrs. Driscoll* answered acknowledging herself indebted to the Damps in the sum of $9.25. The cause was then adjourned to November 14th, 1859. When it was called on that day, *Mrs. Driscoll* was not present. The testimony for the plaintiffs, given in that action, showed that their original claim was only $24.95, and they admitted payment of $10. Judgment, however, was rendered in their favor for the whole amount of $24.95, besides costs; and the whole amount of the judgment was collected upon execution.

Upon these facts the circuit court instructed the jury that if the matters in litigation in this action were adjudicated in the action of *Simon P.* and Andrew J. Damp against the plaintiff herein, before the justice, then the plaintiff could not recover in this action.

Verdict for the plaintiff, for $18.65. The defendant moved for a new trial; the motion was denied, and judgment rendered upon the verdict; from which the defendant appealed.

*Billinghurst & Lewis*, for appellant, cited *Supervisors &c. vs. Briggs*, 2 Denio, 26; *Clarke vs. Dutcher*, 9 Cow., 674, 681; *Brisbane vs. Dacres*, 5 Taunt., 144; *Mowatt vs. Wright*, 1 Wend., 355; *Bilbie vs. Lumley*, 2 East, 469; *Gower vs. Popkin*, 2 Starkie, 85; *Clinton vs. Strong*, 9 Johns., 370; 2 Phillips on Ev., 118; *Marriot vs. Hampton*, 7 Term., 269; 2 Smith's L. C., 237; *White vs. Ward*, 9 Johns., 232; *Loomis vs. Pulver*, id., 244; *Loring vs. Mansfield*, 17 Mass., 394; *Homer vs. Fish*, 1 Pick., 435; *Whitcomb vs. Williams*, 4 id., 228; *Carter vs. Canterbury*, 3 Conn., 456; *Tilton vs. Gordon*, 1 N. H., 33; *Holden vs. Curtis*, 2 id., 61. Equity will not grant relief in such a case. *Le Guen vs. Gouverneur*, 1 Johns. Cas., 226; *Smith vs. Lowry*, 1 Johns. Ch., 320.

*O. F. Jones*, for respondent, cited *Fowler vs. Shearer*, 7 Mass., 14; *Woodward v. Hill*, 6 Wis., 143; *Cook v. Moseley*, 13 Wend., 277; *Halsey v. Carter*, 1 Duer, 667; *Judah v. Brandon*, 5 Blackf., 506; *Barbone v. Brent*, 1 Vernon, 176; *Prentice v. Phillips*, 1 Root, 103; *Hurd v. Fleming*, id., 132; *Eastman v. Hodges*, 1 Chipman (Vt.), 101; *Gossett v. Hollingsworth*, 5 Blackf., 394; *Whitcomb v. Williams*, 4 Pick., 228; and *Rowe v. Smith*, 16 Mass., 306.

*By the Court*, DIXON, C. J. However unjust and wrong it may be for the defendant to keep the money, a part of which is admitted to have been first paid and then collected upon the judgment, yet this action cannot be maintained. The judgment is a bar to all agitation of that question, and conclusive in law that the merits were then determined. It is conclusive that the sum for which it was rendered was then actually due and unpaid. This is the effect ordinarily ascribed to judgments in all collateral proceedings, and the facts do not bring this case within any exception which has ever been established. On the other hand, it is almost word for word and line for line like many cases in which it has been held that the general principle must govern. It is not to be distinguished from

*Marriot vs. Hampton,* 7 D. & E., 269, and *Loring vs. Mansfield,* 17 Mass., 394, and is never to be confounded with *Woodward vs. Hill,* in this court, 6 Wis., 143. It is as clearly distinguishable from the latter as the latter from the two former, the decisions of which were not only not questioned, but their propriety was expressly assented to and sanctioned. *Woodward vs. Hill* is not an extreme case of the class to which it belongs. It was clearly within a well settled exception, and the decision is supported by numerous adjudged cases. The distinguishing feature upon which it turned, was, to use the language of the court, that there was a special trust reposed in the defendant. The money was placed in his hands and received by him to be credited and applied on the bond. He violated that trust. The court was furthermore very careful to note that there was no answer to the action in which the judgment was recovered. The defense was not set up or attempted to be. In this case the facts are reversed. There was no trust, and there was an answer. The payment was a present one—effectual from the moment the money was delivered. The demand was open ; not evidenced by note, bond, or writing of any kind —at most a mere matter of account. There was no relation of trust or confidence beyond that which arises between every debtor and creditor upon the payment of money. There was no special application to be made of the money, as by indorsement upon a note or bond, and from the nature of the case there could be none. It was not even arranged that there should be a credit or entry in the defendant's books, if he had any. It was not money delivered *to become a payment* upon some future application, but a payment absolute and unqualified. And as to the answer, though not a formal plea of payment, it was substantially such. It was so intended, and amply sufficient, had *Mrs. Driscoll* appeared to insist upon the defense. Upon the subject of payment in *Woodward vs. Hill,* this observation occurs: " This is not like the case of a payment the application of which

is made at the time and a receipt taken as evidence of the fact; but the money was delivered to the defendant and received by him to be used for a specific purpose." And as to the answer, after observing that the plaintiff might have appeared and set up the same facts by way of answer, but did not, it is said; "And there is no doubt that had the plaintiff made the attempt and *failed for want of proof, or other cause,* the matter would have become *res adjudicata, and a bar to this action.*" We need not go farther far the sake of discriminating between that case and this, or showing that it does not sustain the decision below. There is no case by which it can be sustained, unless it be the overruled one of *Moses vs. Macferlan,* 2 Burr., 1006.

*Marriot vs. Hampton* was a much stronger case in favor of the right to recover. There the plaintiff had been active and diligent. The proof of the payment was not voluntarily witheld at the former trial, but was prevented by an unavoidable accident. The receipt had been lost, and there was no other proof of payment; so that the plaintiff could not defend himself in the first action. Yet Lord Kenyon said he was afraid of such a precedent. If the action could be maintained, he knew not what cause of action could ever be at rest. And GROSE, J, said it would tend to encourage the greatest negligence if they were to open a door to parties to try their causes again because they were not properly prepared the first time with their evidence. If Marriot was shut out by the stern rule, that the judgment of a court possessing competent jurisdiction "is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have decided" (1 Johns. Cas., 402), then how is *Mrs. Driscoll* to be let in? Certainly she cannot, unless we are prepared to establish a precedent which shall "unsettle foundations." She staid away voluntarily, and has not the excuse of having lost her evidence. It even seems that a part of the payment for which she now claims to recov-

er was admitted by the defendant at the first trial, though not deducted. To allow her now to prove and recover it back, is to say that she may go to and impeach the very point of the former judgment, which was that there was so much due and unpaid on account of the threshing. This cannot be done· The same judgment cannot create a duty for the recovery upon which the plaintiff may have debt, and a duty against him, upon which an action for money had and received will lie. *Philips vs. Hunter*, 2 Blackstone R., 416.

Judgment reversed, and cause remanded with directions that it be dismissed.