Clark v. Fisher.

AMOS B. CLARK V. R. E. FISHER *et al.*

1. INCUMBRANCE — *Definition.* An incumbrance may be defined to be "every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance."

2. ———— *Lease.* An outstanding lease is an incumbrance.

3. UNEXPIRED LEASE — *Measure of Damages.* Where the incumbrance is an unexpired term of lease, the general rule, at least in the absence of any special circumstances, is, that the measure of damages will be the fair rental value of the land to the expiration of the term. The underlying principle is that the damages should be estimated according to the real injury arising from the existence of the incumbrance, which, in the case supposed, is presumably and ordinarily the value of the use of the premises for the time during which the vendee has been deprived of such use.

4. COVENANTS — *Growing Crop — Damages, how Estimated.* When the premises conveyed by a deed from a grantee to a grantor with a covenant against incumbrances have a growing crop thereon at the delivery of the deed, belonging to a tenant of the grantor, and the grantee is deprived of possession on account of the unexpired term of the lease of the tenant, the value of the crop, less the cost and expense of taking care of and harvesting the same, may be considered in estimating the real injury to the grantee arising from being deprived of the possession of the premises until after the crop is harvested and taken away.

*Error from Franklin District Court.*

ON the 28th of February, 1889, *Amos B. Clark* brought his action against *R. E. Fisher* and *Jennie Fisher* to recover $350, with interest from the 2d of May, 1887, on the covenant against incumbrances set out in a deed executed the 1st of April, 1887, by the defendants to him. The recitations of the deed necessary to be referred to are as follows:

" The said R. E. Fisher and Jennie Fisher do hereby covenant and agree, that at the delivery hereof they are the lawful owners of the premises above granted, and seized of a good and indefeasible estate of inheritance therein free and clear of all incumbrances, except a mortgage of $800 to the Kansas Loan and Trust Company, which said second party hereby assumes and agrees to pay; and that they will war-

rant and defend the same in the quiet and peaceable posses-
sion of the said party of the second part, his heirs and assigns,
forever, against all persons lawfully claiming the same, ex-
cept as to said mortgage."

Trial had November 8, 1889, before the court without a
jury. The court took the case under advisement, and ren-
dered judgment for the defendants on January 31, 1890, mak-
ing findings of fact and conclusions of law.

It appears from the record that, sometime before April 1,
1887, the defendants entered into a written agreement with
the plaintiff to convey to him their 80 acre tract of land in
Johnson county for the sum of $4,200, and to give immedi-
ate possession on delivery of the deed. On April 1, 1887,
they made such conveyance, by warranty deed containing the
covenants above referred to. At that date, J. A. Dent had
been in open and visible possession, as R. E. Fisher's tenant,
for about three years. In the fall of 1886, a new lease had
been made to Dent, by the terms of which he was to plant 60
acres in wheat, harvest it, and deliver to Fisher, in Olathe,
one-third of the grain as rent, and he was also to have the use
of the house and garden until the wheat should be harvested.
He likewise agreed to yield possession on 30 days' notice, in
case of a sale by Fisher; but with the privilege of harvest-
ing and removing the crop. He had no lease of or claim
upon the meadow and pasture after the grazing season of
1886.

On April 3, 1887, only two days after the deed was deliv-
ered to him, Clark conveyed the land to North and others, of
Kansas City, Mo., the sale thereof to them having, in fact,
been negotiated and agreed upon before the conveyance to
Clark. Plaintiff's grantees, North et al., at once sent sur-
veyors to lay off the land into town lots, it being adjacent to
Olathe; but these surveyors having entered into Dent's wheat
field, and commenced to drive stakes and mark off lots, he or-
dered them to desist. They did so. Then North & Co. de-
manded possession of Clark, who thereupon bought from Dent
his two-thirds interest in the crop for $300, and he then made

no further difficulty. Thereupon, North & Co. completed the survey, and plowed roadways, or streets, as designated on the survey, through the growing wheat, and in due time caused the same to be harvested by Dent, who harvested and threshed the same for one-half thereof, North & Co. receiving and retaining the other half. The amount harvested altogether was 700 bushels, worth 60 cents per bushel. If none had been plowed up for streets, the amount would have been 850 bushels, and its value $510. When the deed from the defendants to plaintiff was ready for delivery, the defendants, residents of Ottawa, sent their agent with the deed to Olathe to complete the sale. At that time, some details had to be settled with reference to interest upon a mortgage then outstanding on the land, and to which the conveyance was subject. The agent had an interview with the plaintiff upon the matter, and was about to proceed to see Dent, the tenant, relative to possession, when the plaintiff stated, in substance, that North & Co. were about to purchase an adjoining tract, and he believed it could be arranged to have Dent move upon that, and that he could arrange the matter better than the agent, and that it would be best for the agent to say nothing to Dent, as the latter might take an unfair advantage.

He insisted, however, that he must have possession; that possession must follow the deed, as he had agreed to give possession to others, to whom he had negotiated a sale, and that he would stand upon the contract. After this interview the deed was delivered, and the consideration paid before any agreement had been made with Dent as to possession. The plaintiff never had possession, and only desired it that he might deliver such possession to his grantees, North & Co. The $300 paid to Dent was the reasonable value of his possession. Such possession, however, was of but little value, aside from his interest in the crop. The plaintiff made the arrangement with North & Co., owners of an adjoining tract, as contemplated, whereby Dent was permitted to move upon that tract, without expense to the plaintiff; so that Dent was

satisfied to and did give up his possession by being paid what appears to be the fair value of his interest in the wheat.

Judgment having been rendered in favor of the defendants and against the plaintiff, the plaintiff excepts, and brings the case here.

*Mechem & Smart*, for plaintiff in error.

*Jno. W. Deford*, and *W. A. Deford*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The plaintiff obtained his deed from the defendants on the 1st of April, 1887; this contained a covenant against incumbrances. At the time of the conveyance the land was in the possession of J. A. Dent, the tenant of R. E. Fisher. Under the terms of this lease, he was to yield possession on 30 days' notice in case of a sale by Fisher, with the privilege of harvesting and removing a crop of wheat upon 60 acres of the land. Under the terms of the lease, Dent was to harvest and deliver to Fisher one-third of the wheat as rent. An incumbrance has been defined

1. Incumbrance — definition. to be "every right to, or interest in, the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." (Rawle, Cov., §§ 75, 76,

2. Lease. 191.) Hence, an outstanding lease is an incumbrance. (*Smith v. Davis*, 44 Kas. 362; *Fritz v. Pusey*, 13 N. W. Rep. [Minn.] 94.)

As the plaintiff's interest in the property purchased by him was diminished to the extent of the rights transferred by the lease to J. A. Dent, there was a breach of the covenant against incumbrances. The lease would not have expired until in July or August of 1887. "Where the incumbrance is an un-

3. Unexpired lease — measure of damages. expired term or lease, the general rule, at least in the absence of any special circumstances, is, that the measure of damages will be the fair rental value of the land to the expiration of the term. The underlying principle is, that the damages should be estimated ac-

cording to the real injury arising from the existence of the incumbrance, which, in the case supposed, is presumably and ordinarily the value of the use of the premises for the time during which the vendee has been deprived of such use." (*Fritz v. Pusey,* supra; Rawle, Cov., § 191; *Porter v. Bradley,* 7 R. I. 542.) Where there is a crop upon the land to harvest after the delivery of the deed, the value of the crop, less the cost and expense in taking care of and harvesting the same, may be considered in estimating the real injury to the grantee arising from being deprived of the possession of the premises until after the crop is harvested and taken away. In this case, there being no reservation in the deed from defendants to plaintiff, the right of immediate possession of the land passed to the plaintiff. If the defendants had given to the plaintiff the immediate possession of the premises at the time of the delivery of the deed, as they covenanted therein, he would have had the exclusive possession thereof with all the crops growing thereon. (*Chapman v. Veach,* 32 Kas. 167; *Robinson v. Hall,* 33 id. 139.)

4. Covenants—growing crop—damages, how estimated.

The trial court seems to have disposed of the case upon the theory that the conveyance to the plaintiff substituted him in the place of the former owner and landlord, and that his only right or interest in the land for the unexpired term of the lease of the tenant was the landlord's share of the crop. The result of this rule would be, that an outstanding lease is no incumbrance, as the purchaser is entitled to collect only the unpaid rent—nothing more. A purchaser, if he prefers so to do, may recognize the lease of the tenant, and accept the unpaid rent, after he has received his conveyance without any reservations or exceptions. (*Smith v. Leighton,* 38 Kas. 544.) But if he is unwilling to receive the unpaid rent in satisfaction of his damages he cannot be compelled to do so. He is entitled to all his damages for the injury arising to him from the existence of the lease. The defendants cannot avail themselves of the plaintiff's knowledge that the tenant was in the open and visible possession of the land at

the time he accepted the deed. As between the plaintiff and the tenant, the plaintiff's knowledge would have defeated the recovery of possession, but this would not be so between the plaintiff and defendants after the delivery of the deed. It has been repeatedly decided that knowledge on the part of the grantee of the existence of the incumbrance at the time the covenant is entered into will not relieve the covenantor from his liability on the covenant. "Incumbrances should be excepted for the protection of the vendor; for, if not so excepted, the fact of their being known to the purchaser will be no bar to his recovery upon the covenant." (Rawle, Cov. (5th ed.), § 88; *Kellogg v. Malin,* 50 Mo. 500, and cases cited; *Beach v. Miller,* 51 Ill. 206, and cases cited.)

It is argued that the plaintiff waived his claim for damages under the covenant against incumbrances, because he arranged with the tenant to give possession. The deed speaks for itself. Prior stipulations of every nature are merged in it. The parties have embodied the terms of the contract between them in the written conveyance, and this cannot be altered or contradicted by prior declarations or agreements. (*Porter v. Bradley,* supra.) Further, at the time the plaintiff accepted the deed, he informed the defendants "that he must have possession of the land purchased by him, and would stand upon the contract." It is difficult in this case to determine from the findings of fact the fair rental value of the land from April 1, 1887, to the expiration of the term of the tenant, or the actual injury to the plaintiff arising from the existence of the lease.

"Where the outstanding title or the incumbrance has been obtained or removed by purchase, it is considered that the plaintiff is entitled to recover the amount which he has fairly and reasonably paid for that purpose, the burden of proof being upon him to show what the outstanding title or incumbrance was really worth, the mere fact of payment being, in general, no evidence whatever of this, and in the absence of such evidence it seems that only nominal damages can be recovered." (Rawle, Cov., § 192.)

The evidence is not preserved. There is a finding of the

trial court that the reasonable value of the possession of the tenant was $300. If this finding stood alone and was not qualified in any way, then the plaintiff would be entitled to recover from the defendants $300 as his actual damages; but this finding is limited by other findings. The possession of the tenant was of but little value aside from his interest in the crop. The crop of wheat, if all were harvested, was estimated at 850 bushels, worth $510. Dent harvested the crop for one-half thereof, North & Co., the grantees of the plaintiff, receiving the other half. There is no finding as to the value of the crop belonging to the tenant, less the cost and expense of taking care of and harvesting the same. Dent received one-half of the crop for harvesting it, but the findings do not show that this was the reasonable or ordinary expense for such work. As the trial court seems to have based the value of the tenant's possession upon his interest in the crop of wheat, we cannot accurately determine the value of that crop to the plaintiff, in the absence of any findings of the expense of harvesting it. The court found that the wheat, at the time it was harvested, was worth 60 cents a bushel; but, evidently, this means that the wheat was worth 60 cents a bushel after it was harvested and ready to be measured.

We suppose that other and additional findings were not made by the trial court, because the case seems to have been decided, as before stated, upon the theory that the plaintiff, by his conveyance from the defendants, was merely substituted for the former owner and landlord. Under these circumstances, we cannot, upon the findings as now presented, satisfactorily dispose of the case. The findings do not support the judgment rendered, and therefore a different judgment is necessary. On account of the absence of necessary findings, the judgment must be reversed, and the cause remanded for a new trial, or for additional findings upon the evidence introduced. The judgment finally to be rendered, of course, must follow the views of the court as herein expressed.

All the Justices concurring.