Argued and submitted January 21, Court of Appeals reversed and trial court affirmed July 28, reconsideration denied September 9, 1987

CAMPBELL et al,
*Petitioners on Review,*

*v.*

KARB et al,
*Respondents on Review.*

(TC 16-79-06435; CA A31334; SC S33253)

740 P2d 750

James B. Ehrlich, Eugene, argued the cause for petitioners

James B. Ehrlich, Eugene, argued the cause for petitioners on review. With him on the brief was Larry O. Gildea, P.C., Eugene.

Kurtis M. Lombard, Eugene, argued the cause for respondents on review. With him on the brief was Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

LENT, J.

.

**LENT, J.**

The issue is whether the Court of Appeals erred in holding there was no evidence to support the trial court's judgment for plaintiffs in their action for damages incurred in curing defendants' breach of covenant against encumbrances contained in a contract for sale of land and improvements by defendants to plaintiffs. We hold that there was evidence to support the trial court's judgment and therefore reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

Plaintiffs were purchasers from defendants of rural land and improvements (buildings) under a contract that contained a covenant against encumbrances. After plaintiffs took possession of the property, discussions occurred between plaintiffs and the employees of an adjoining landowner, International Paper Company (IP), about whether the buildings encroached on IP's property. After discussions between plaintiffs and IP's employees about the need for a survey, a survey was conducted that revealed that the buildings did indeed stand partly on IP's land. The cost of the survey was $7,741. IP made a claim against plaintiffs to pay $6,945 of that amount; plaintiffs disputed the claim.

Plaintiffs commenced this action against defendants for breach of the covenant and sought damages for cure of the breach.[1] While this cause was pending, plaintiffs commenced an action against IP for alleged timber trespass. In that action, plaintiffs contended that IP had logged off trees on plaintiffs' side of the true boundary and left slash that needed to be cleaned up. Plaintiffs claimed that the timber taken by IP was worth $1,500 and that the cost of slash removal was $6,200. Plaintiffs sought double damages under ORS 105.815. IP denied liability and counterclaimed in ejectment and for $6,945, its claim for survey costs. Plaintiffs denied liability on both of IP's claims.

Plaintiffs' action against defendants and plaintiffs'

---

[1] The second "count" of plaintiffs' second amended complaint was for breach of covenant. The first "count" was for breach of contract and asked damages for the alleged difference between the fair market value of the property without the encroachment and its fair market value with the encroachment. The petition for review does not involve any issue related to the first "count."

action against IP were consolidated for trial. Shortly before trial was to commence, the case between plaintiffs and IP was settled. The settlement provided that plaintiffs would release their claim for timber trespass and slash removal and in return IP would release its claim for $6,945 in survey costs, would pay plaintiffs $2,500 and would convey one-half acre of land to plaintiffs. The one-half acre conveyance would result in plaintiffs' buildings being on land owned by them with enough surrounding land to protect their buildings from IP's logging operations.

Plaintiffs' cause against defendants for damages for breach of covenant proceeded to trial on waiver of a jury, and the trial judge found that defendants had breached the covenant and that plaintiffs had cured the breach by obtaining title from IP to the land on which the buildings rested. The trial court found that it was reasonably foreseeable that the cost of cure would include obtaining an accurate survey and that $6,945 was plaintiff's portion of the cost of survey and acquisition of the land needed to cure the breach.[2] The court found that

> "The damages sought by Plaintiffs relating to the settlement of the trespass claim are too speculative and unforeseeable to be reasonable and thus cannot be recovered."

Lastly, the court found that there was no evidence that curing the encroachment required the services of an attorney and therefore denied plaintiffs' claim for attorney fee expenses in connection with the claims between plaintiffs and IP.

The trial court gave judgment for plaintiffs in the amount of $6,945 and for costs and disbursements. Defendants timely appealed. Plaintiffs cross-appealed for additional damages.

One item of trial court business was left unfinished. Because the contract provided for attorney fees to the prevailing party in an action on the contract, plaintiffs had sought

---

[2] Defendants had contended that plaintiffs had acquired title to the land under the buildings by tacking plaintiffs' adverse possession to defendants' adverse possession for the requisite 10-year period. ORS 12.050. The trial court found that a part of the time of defendants' possession and most of the time of plaintiffs' possession was with the permission of IP and therefore not adverse. Accordingly, the trial court found that plaintiffs had not perfected title by adverse possession.

attorney fees. The trial court eventually gave judgment for plaintiffs in the amount of $10,000 for attorney fees. From that judgment defendants timely appealed.

In *Campbell v. Karb,* 80 Or App 220, 721 P2d 881 (1986), the Court of Appeals, purporting to review the evidence *de novo,* found that both plaintiffs and defendants had occupied the disputed parcel under permission from IP and no title was acquired by adverse possession. Both plaintiffs' action against these defendants and the claims and counterclaims in plaintiffs' action against IP were of a nature that would have entitled the parties to trial by jury. That being so, the findings of the trial court were binding on appeal unless there was no evidence to support them. Or Const Art VII (Amend), § 3; ORCP 62F.; *Illingworth v. Bushong,* 297 Or 675, 694, 688 P2d 379 (1984). The Court of Appeals held there was evidence to support the trial court's findings on the issue of adverse possession, and so do we.

The Court of Appeals then held that there was evidence to support the trial court's finding that the value of the timber trespass and slash removal claim was too speculative to support an award of damages and affirmed the trial court in that respect.

The Court of Appeals also held that there was no evidence to support the trial court's finding of damages in plaintiffs' favor for $6,945 because plaintiffs never had to pay that amount and actually received a benefit by reason of IP's release of that claim against them. Said the court:

"It is incomprehensible how they can assert that defendants should reimburse them for the loss of a claim against them, on which they could not recover but might have been held liable."

80 Or App at 224.

The Court of Appeals then upheld the award of $10,000 attorney fees, mistakenly believing it to have been awarded by the trial judge as "defense expenses incurred to obtain settlement with IP." *Id.* On reconsideration, the Court of Appeals recognized the mistake and reversed the award of attorney fees given by the trial court to plaintiffs. *Campbell v. Karb,* 81 Or App 281, 724 P2d 918 (1986).

Plaintiffs petitioned for review, contending that both

the trial court and Court of Appeals had found that defendants had breached the covenant and contending that the trial court's award of damages for $6,945 in curing the breach was supported by evidence. Plaintiffs also urged that they were entitled to recover "those reasonable attorney fees and costs incurred in negotiating the settlement" with IP, that the evidence of the value of their timber trespass claim was not speculative and that they were entitled to damages for giving up that claim as a part of the settlement with IP.

■    A covenant against encumbrances is a contract of indemnity. *De Carli v. O'Brien,* 150 Or 35, 46, 41 P2d 411 (1935). 6A Powell on Real Property, ¶ 898, 81-130 (1986). Recognizing this, defendants concede that a covenantor "is responsible to reimburse the covenantee for the amounts paid to cure the breach." In other words, the necessary reasonable expense of cure is the measure of damages. As one court has put it:

> "[S]ince purchasers eventually acquired title to the deficient land from the actual titleholder, the measure of damages in this case generally is the purchase price for the outstanding title, provided it was reasonable in amount and did not exceed the consideration paid by the purchaser to the vendor-in-deficiency, plus reasonable expenses to obtain the title to the deficient acreage."

*Gonzales v. Garcia,* 89 NM 337, 552 P2d 468, 470 (1976).

Where a vendee has been required to purchase an outstanding title to cure a breach of the vendor's covenant, this court has applied a like measure of damages. In *Arrigoni v. Johnson,* 6 Or 167, 171 (1876), this court held that where the vendee is required to purchase an outstanding title to cure the breach of covenant, "the measure of damages for breach of the vendor's covenant is the amount so paid. (*Hard v. Hull,* 12 Wis. 112; *Bailey v. Scott,* 13 Wis. 618; *Fawcett v. Woods,* 5 Iowa 400; *Lawless v. Collier,* 19 Mo. 480; Rawle on Covenants, 65-80.)"

■    In the instant case, to cure the breach plaintiffs acquired title from IP to the land on which the buildings rested and enough more to protect the buildings and use thereof from IP's logging operations. Under the above rule of damages, they were entitled to recover the reasonable cost of

acquiring title to at least the land on which the buildings rested.

The trial court found that the amount of $6,945 represented plaintiffs' "portion of the cost of the survey and the acquisition of the .215 acre needed to cure the encroachment."

The Court of Appeals concluded that it was "incomprehensible" that plaintiffs should assert that they should be reimbursed for the "loss" of a claim against plaintiffs. This misses the mark. The claim that the plaintiffs lost was their claim for timber trespass and slash removal.

The undisputed evidence is that plaintiffs had commenced an action against IP, in which plaintiffs asserted a claim for approximately $15,400 for timber trespass and slash removal. When the action was filed, that claim might have had a value as low as zero or as high as $15,400 plus costs and disbursements. On the other hand, IP had filed counterclaims for ejectment and for $6,945 that IP contended plaintiffs were obliged to pay as their share of the survey expense to locate the true boundary line between the properties of plaintiffs and IP.[3] The value of the claim for $6,945 might have been as low as zero or as high as $6,945 plus costs and disbursements. Because the buildings sold by defendants to plaintiffs did encroach on IP's land, the ejectment claim had some monetary value for settlement purposes. Plaintiffs and IP decided to compromise and settle their claims against each other.

They could have structured their settlement as follows. In return for dismissal of IP's counterclaims, plaintiffs would pay to IP $6,945. In return for plaintiffs' dismissal of their action, IP would deed to plaintiffs the one-half acre of land and would pay to plaintiffs $9,445 ($6,945 plus $2,500). Had the settlement of those respective claims been so structured, IP's and plaintiffs' wealth positions after settlement would have been exactly what was actually achieved without the step of passing the sum of $6,945 back and forth. In other words, for settlement purposes IP obviously valued plaintiffs' claim at $9,445 plus the one-half acre of land, and plaintiffs valued IP's counterclaims at $6,945.

---

[3] The survey was also necessary to establish whether in fact the buildings sold by defendants to plaintiffs did indeed encroach on IP's land.

To hold as did the Court of Appeals would require one to infer that out of the goodness of its corporate heart IP gave up, without any consideration therefor, a perfectly valid claim for ejectment and, in addition, donated to plaintiffs one-half acre of land and $2,500. That is not a reasonable inference from the undisputed evidence concerning the settlement between IP and plaintiffs.

The effect of the actual structure of the settlement was the same as that hypothesized above. Plaintiffs in effect paid $6,945 to cure the breach of covenant. When that is understood, plaintiffs are entitled under the rule of damages stated above to recover at least that sum if it was reasonable in amount. There is no evidence that it was not reasonable. The sum was fixed in bargaining by two parties dealing at arm's length. This is the kind of evidence that we usually accept as being the right measure of fair market value.

The trial court found that $6,945 represented plaintiffs' portion of the cost of the survey and the .215 acre necessary to cure the breach. There was evidence to support that finding; therefore, it must stand.

■ Plaintiffs did incur attorney fees in negotiating with IP to cure the breach, but the trial court found that there was no evidence that the services of an attorney were required, *i.e.,* that they were necessary. Because the covenantee can recover only necessary expenses, plaintiffs are not entitled to recover from defendants those fees.

■ Because we hold that the trial court must be affirmed in its award of $6,945 as damages for the breach of covenant, it follows that the trial court's award of $10,000 for attorney fees for the prosecution of the instant action must also be affirmed.

The decision of the Court of Appeals is reversed, and the judgment of the trial court for $6,945 plus attorney fees of $10,000 and for costs and disbursements is affirmed.