**LOVELAND ESSENTIAL GROUP, LLC,** a Minnesota limited liability company, Plaintiff–Appellant and Cross–Appellee,

v.

**GROMMON FARMS, INC.,** a Colorado corporation, Gary Grommon, and Connie Grommon, Defendants–Appellees and Cross–Appellants.

No. 09CA1021.

Colorado Court of Appeals, Div. I.

Sept. 16, 2010.

Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Tracy A. Oldemeyer, Fort Collins, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Fischer and Fischer, LLP, Erik G. Fischer, Fort Collins, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge J. JONES.

This case arises from a sale of real property and assets involving the following parties: Loveland Essential Group, LLC (Buyer); Grommon Farms, Inc., Gary Grommon, and Connie Grommon (collectively Seller); and Martin Jara and PoolTyme, L.L.C. (collectively Tenant). The district court found that Seller had breached two contracts (a real estate purchase agreement and an asset purchase agreement) and a warranty deed by conveying the property subject to an encumbrance, the lease, but awarded Buyer no damages. The court ruled in Seller's favor on Buyer's fraud claim, which also pertained to the existence of the lease.

Buyer appeals and Seller cross-appeals various aspects of the district court's judgment. We uphold the district court's findings that Seller breached the real estate purchase agreement and the warranty deed by conveying the property subject to the lease, as well as the court's finding that Buyer did not prove fraud. However, we reverse the district court's finding that Seller breached the asset purchase agreement. We also conclude that the court applied an incorrect measure of damages to Buyer's breach of contract and breach of warranty claims. Therefore, we affirm in part, reverse in part, and remand the case for further proceedings regarding Buyer's claimed damages.

## I. Background

In March 2006, Seller and Buyer entered into a letter of understanding for the sale of Loveland RV Village, which comprised two parcels. A recreational vehicle park was on one parcel (the RV Property). A sports bar was on the other, smaller parcel (the Bar Property), which Seller leased to Tenant.

In April 2006, Seller and Buyer entered into a Real Estate Purchase Agreement (RPA) and an Asset Purchase Agreement (APA), in which Seller agreed to sell the real property and assets, respectively, of Loveland RV Village to Buyer. The RPA required that there not be any encumbrances on the real property, other than those identified therein. The APA similarly required that there not be any encumbrances on the assets, other than those identified therein. Neither the RPA nor the APA identified Tenant's lease as an encumbrance.

During negotiations, Seller allegedly told Buyer that Tenant paid $2,800 per month under an oral month-to-month lease for the Bar Property. But two days before closing, Buyer discovered that Tenant had a written lease for the Bar Property, and received a copy of that lease the following day. According to the written lease, Tenant's rent obligation is $2,800 per month. It states that it would expire on April 1, 2009, but gives Tenant an option to renew it for an additional six years, an option Tenant exercised during the pendency of this litigation. Representatives of Seller and Tenant testified that they signed the lease in 2005, but backdated it to 2003.

Buyer sent Seller a written objection to the lease the day of the closing. Seller responded that Buyer had to accept the lease

or there would be no sale. Buyer closed on the property, but no representative of Buyer said that Buyer would accept the lease. Nor did Buyer so indicate in writing. At the closing, Seller executed a Warranty Deed in which Seller conveyed Loveland RV Village to Buyer, warranting that the property was free and clear of all encumbrances, except those identified in an attachment. The lease was not an identified exception.

Several months after Buyer took possession, it sent Tenant three notices to quit the Bar Property. Tenant refused. Buyer filed separate lawsuits against Seller and Tenant, which the court consolidated. Buyer claimed that Seller breached the RPA, the APA, and the Warranty Deed by conveying the property subject to the lease; Seller committed fraud by representing that it did not have a written lease with Tenant; Tenant conspired to commit fraud by executing the written lease on the eve of closing and backdating it; and Seller was obligated to indemnify Buyer for damages incurred by virtue of the existence of the lease. Tenant asserted a counterclaim for intentional infliction of emotional distress, alleging harassment by Buyer arising out of the dispute over the validity of the lease.

The case was tried to the court. The court found that Seller breached the RPA, the APA, and the Warranty Deed because the lease encumbers the property. However, the court did not award Buyer any damages, concluding that Tenant's payment of fair market rent under the lease ($2,800 per month) means that Buyer is not harmed by the existence of the lease. The court also found against Buyer on its fraud and conspiracy claims, finding that the lease was validly executed in 2005 and that Buyer was aware of the written lease and its terms before the closing. The court found against Tenant on its counterclaim, but determined that Tenant was entitled to an award of its reasonable attorney fees from Buyer under the prevailing party provision of the lease, and subsequently ordered Seller to indemnify Buyer in the amount of Tenant's reasonable attorney fees. Finally, the court concluded that Buyer was not entitled to an award of its attorney fees from Seller.

## II. Buyer's Appeal

Buyer contends the district court erred by (1) concluding that it was not entitled to damages from Seller for breach of the RPA, APA, and Warranty Deed; (2) concluding that it was not entitled to an award of its reasonable attorney fees; and (3) finding that Seller did not commit fraud.[1]

We conclude that a remand is necessary for further findings on Buyer's claimed damages, but otherwise reject Buyer's contentions.

### A. Buyer's Damages for Seller's Breach

Relying on *Downtown Parking Co., Inc. v. Vorbeck,* 524 P.2d 629 (Colo.App.1974) (not published pursuant to C.A.R. 35(f)), the district court ruled that the proper measure of damages for a breach of an agreement to convey property free and clear of encumbrances, where the encumbrance at issue is a lease, is the fair rental value of the property to the expiration of the lease term.[2] The court found that Tenant pays fair rental value under the lease, and therefore Buyer was not entitled to any damages for Seller's breach of the RPA, APA, and Warranty Deed.

Buyer contends the court applied an incorrect measure of damages. It argues that the proper measure is the diminution in the property's fair market value caused by the existence of the lease—as measured assuming a more profitable use than that to which the property is currently being put—rather than the measure articulated in *Downtown Parking.* We agree that under the circumstances here, Buyer could claim damages for diminution in the value of the property potentially exceeding the fair rental value of the property. Because the district court did

---

**1.** Buyer also appealed the district court's ruling that Tenant had not conspired to commit fraud. Shortly before oral argument, however, Buyer and Tenant settled their dispute, and therefore we do not address Buyer's claim against Tenant.

**2.** As discussed below, we affirm the district court's findings that Seller breached the RPA and the Warranty Deed by conveying the real property subject to the lease.

not make any findings concerning Buyer's request for such loss in value, we remand the case to the district court for such findings.

■ We review de novo the district court's application of governing legal standards; however, the district court "has the sole prerogative to assess the amount of damages and its award will not be set aside unless it is manifestly and clearly erroneous." *Morris v. Belfor USA Group, Inc.,* 201 P.3d 1253, 1257 (Colo.App.2008).

■ "In a breach of contract action, the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred." *Acoustic Marketing Research, Inc. v. Technics, LLC,* 198 P.3d 96, 98 (Colo.2008). This principle applies to breaches of covenants in real estate purchase contracts and warranty deeds. *See* 14 Richard R. Powell, *Powell on Real Property* § 81.04[2] (Michael Allan Wolf ed., 2009) (*Powell*); *see also Terry v. Salazar,* 892 P.2d 391, 393 (Colo.App.1994) (deeds are generally construed in accordance with rules of construction of written instruments), *aff'd,* 911 P.2d 1086 (Colo.1996); *cf. Clough v. Williams Production RMT Co.,* 179 P.3d 32, 42 (Colo.App.2007) (applying this principle to a breach of a covenant in a lease).[3]

■ At issue here are breaches of covenants against encumbrances.

An encumbrance within the meaning of the covenant is a right or interest in the land which diminishes the value of, but is not inconsistent with the ability to convey, fee title. It includes "any burden resting not only on the title to the real estate, but on the real estate itself which tends to lessen the value or interfere with its free enjoyment."

*Feit v. Donahue,* 826 P.2d 407, 410 (Colo. App.1992) (quoting in part 7 George W. Thompson, Real Property § 3183, at 272 (1962)); *see Powell* § 81A.06[2][c][i], at 81A–

117. An unexpired lease is an encumbrance. *Feit,* 826 P.2d at 410; *Downtown Parking,* 524 P.2d at 631; *see Powell* §§ 81.03[6][d][iii], 81A.06[2][c][iv].

■ A covenant warranting that the property is free from encumbrances is an agreement to indemnify the purchaser from any loss to the value of the property due to an encumbrance's existence. *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club,* 75 Haw. 480, 866 P.2d 951, 962 (1994); *Campbell v. Karb,* 303 Or. 592, 740 P.2d 750, 752 (1987); *Patel v. Khan,* 970 P.2d 836, 840 (Wyo.1998); *see Powell* § 81A.06[2][c][i], at 81A–177, § 81A.06[4][b], at 81A–129. Thus, in the event of a breach of this covenant, where the purchaser has paid to remove an encumbrance or has the right to do so unilaterally, the necessary reasonable expense to cure the defect (not exceeding the amount the purchaser paid the covenantor for the property) is the proper measure of damages. *Evans v. Faught,* 231 Cal.App.2d 698, 42 Cal.Rptr. 133, 141 (1965); *Clark v. Fisher,* 54 Kan. 403, 38 P. 493, 495 (1894); *Campbell,* 740 P.2d at 752–53; *see Powell,* § 81A.06[4][b], at 81A–129. But in the absence of such expense or the unilateral right to pay to extinguish the encumbrance, the measure of damages is the diminution in the property's fair market value caused by the encumbrance's existence (again, not to exceed the purchase price). *Evans,* 42 Cal. Rptr. at 141; *see Powell* § 81A.06[4][b], at 81A–129.[4] In either event, consequential damages may also be awarded. *See Powell* § 81A.06[4][c].

In *Downtown Parking,* the division articulated the measure of damages where the existence of a lease breaches a covenant against encumbrances as "the fair rental value of the property to the expiration of the term of the lease." 524 P.2d at 631. Believing itself to be bound by this pronouncement, the district court here considered only that measure and, though noting the parties' re-

---

3. Of course, the law also recognizes that specific performance, rescission, liquidated damages, and consequential damages may be appropriate remedies for breach of a contract to convey land, and that damages for such a breach may be subject to other limitations. *Powell* § 81.04[2].

4. In determining this amount, the fact finder must consider not only the unexpired term of the lease, but any term for which the tenant may, at its sole option, extend the lease, if the fact finder determines that extension is more likely than not. *See Tibbetts v. Nichols,* 578 So.2d 17, 19 (Fla. Dist.Ct.App.1991).

spective evidence regarding diminution in value, made no finding as to whether Buyer had proved diminution in value beyond fair rental value. We conclude that the court erred in applying the fair rental value measure without considering other evidence of damages.

The measure of damages articulated in *Downtown Parking* is also recognized by (generally older) cases from other jurisdictions and treatises. *See, e.g., Musial v. Kudlik,* 87 Conn. 164, 87 A. 551, 554 (1913); *Klippel v. Borngesser,* 177 Wis. 423, 188 N.W. 654, 655 (1922); 11 *Thompson on Real Property* § 96.16(c)(2), at 785 (David A. Thomas ed., 2002). These cases, however, typically concern property as to which leasing and collection of rent is not only the use of the land at the time of sale, but as to which such use is the highest and best use of the property.[5]

■ We agree that, where the encumbrance at issue is a lease, the difference between the fair rental value and the rent under the lease, if any, may represent the diminution in the property's value where the lease is consistent with the highest and best use of the property. In such cases, this measure truly represents the loss in value. But where the existence of a lease precludes development of the property for some more profitable use (that is, the lease does not represent the highest and best use of the property), this measure may not adequately compensate the buyer for the loss in value. In these cases, the loss in value will be the difference between the fair market value of the property with the encumbrance and the fair market value without it. *See Evans,* 42 Cal.Rptr. at 141–42; *Lacosse v. Wergin,* 175 Wis.2d 624, 502 N.W.2d 283, 1993 WL 91578, *7 (App.1993) (unpublished table decision) (citing Wisconsin Supreme Court cases both pre- and post-dating *Klippel* ).

Here, Buyer alleged that the property was not being put to its highest and best use. It alleged diminution in value attributable to its inability to develop the property for retail purposes because of the lease. Though Seller contends that the district court concluded that Buyer's evidence of highest and best use and concomitant diminution in value was legally insufficient, the court's order reveals no such conclusion. Rather, the court merely noted the lender's appraiser's and the parties' respective experts' differing opinions as to the highest and best use of the property. The court did not make findings on Buyer's expert's opinion of diminution in value. (As noted, the court did make findings as to the fair rental value based, in part, on certain testimony of these witnesses.) We, of course, cannot make any such findings, as they would depend in large part on credibility determinations.

■ Therefore, we must remand the case to the district court for further findings on Buyer's damages. The essential question the court must decide is whether Buyer met its burden of proof by presenting substantial, credible evidence of diminution in fair market value. *See Mahan v. Capitol Hill Internal Medicine P. C.,* 151 P.3d 685, 689 (Colo.App. 2006) (a claimant must present substantial evidence which, together with the inferences which reasonably may be drawn therefrom, must be sufficient to provide a reasonable basis for computation of damages); *see also Gill Grain Co. v. Poos,* 707 S.W.2d 434, 439 (Mo.Ct.App.1986) (burden of providing such evidence is on the party claiming a breach of the covenant); *Powell* § 81A.06[4][c], at 81A–130 (same). If not, Buyer is not entitled to any damages, because the court has already determined that Buyer did not prove any damages under the fair rental value measure.[6]

---

5. "Highest and best use" refers to "the use that will generate the most profit." *Black's Law Dictionary* 1682 (9th ed. 2009); *see also City of Aurora v. Webb,* 41 Colo.App. 11, 14, 585 P.2d 288, 291 (1978). It is a concept commonly employed in determining the fair market value of property in a variety of contexts.

6. As discussed below, Buyer is not entitled to damages against Seller for the attorney fees Buy-

er incurred in unsuccessfully suing Tenant to have the lease declared invalid. As for the alleged consequential damages requested by Buyer (such as for loss of fixtures and improvements and the cost of maintenance and repairs), the district court determined that Buyer had not sought them until after judgment and denied them because the request was untimely. That decision is supported by the record, and therefore we will not disturb it.

### B.   Buyer's Attorney Fees

Buyer contends that the indemnity clauses in the RPA, APA, and Warranty Deed entitle it to reasonable costs and attorney fees it incurred in suing Tenant to determine the validity of the lease (the conspiracy claim), and therefore the district court erred in denying its request for such damages. Buyer similarly contends the indemnity clauses entitle it to an award of costs and fees it incurred in suing Seller, and that the district court erred in refusing to award it such costs and fees. We are not persuaded by either contention.

Buyer's contention presents an issue of contract interpretation, which we review de novo. *Agritrack, Inc. v. DeJohn Housemoving, Inc.,* 25 P.3d 1187, 1192 (Colo.2001); *Newflower Market, Inc. v. Cook,* 229 P.3d 1058, 1061 (Colo.App.2010).

Paragraph 5.01(n) of the RPA provided, in relevant part:

Seller and the Grommons will indemnify, defend and hold Purchaser harmless from any loss, cost, damage or expense, including, without limitation, court costs [and] reasonable attorneys fees, suffered or incurred by Purchaser arising out of any breach by Seller or the Grommons of any of the warranties contained in [the RPA].

The Warranty Deed provided:

The grantor shall and will WARRANT AND FOREVER DEFEND the above-bargained premises in the quiet and peaceable possession of the grantee . . . against all and every person or persons lawfully claiming the whole or any part thereof.

Buyer relies on these provisions.

With respect to its claim for damages consisting of costs and fees incurred in suing Tenant, Buyer cites *Tibbetts,* 578 So.2d 17, in which the court held: "A covenantee is entitled to recover attorney's fees expended in a suit to maintain or defend title against a third party when the third-party action was made necessary by the covenantor's breach of covenant." *Id.* at 19. We do not see how Buyer's unsuccessful suit against Tenant was *necessary* to either maintain or defend Buyer's title.

Buyer's contention that the provisions at issue are fee-shifting provisions entitling it to an award of costs and fees incurred in suing Seller fares no better. Divisions of this court have held that similar indemnity provisions apply "only to attorney fees incurred in defending claims asserted by third parties against the indemnitee, not to fees incurred in seeking to recover damages caused to the indemnitee by the indemnitor directly." *Regency Realty Investors, LLC v. Cleary Fire Protection, Inc.,* —— P.3d ——, —— (Colo. App.2009); *see Mid Century Ins. Co. v. Gates Rubber Co.,* 43 P.3d 737, 739 (Colo. App.2002); *May Dep't Stores Co. v. University Hills, Inc.,* 789 P.2d 434, 437 (Colo.App. 1989); *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 759 P.2d 757, 760 (Colo.App.1988), *rev'd in part on other grounds,* 776 P.2d 362 (Colo. 1989).

### C.   Buyer's Fraud Claim

Buyer contends the district court erred in finding that Seller did not commit fraud because Buyer possessed the written lease and had actual knowledge of its terms prior to the closing and, therefore, Buyer could not have justifiably relied on Seller's alleged representation that Tenant had a month-to-month tenancy with no written lease.

To prevail on a fraud claim, a claimant must prove: (1) the defendant misrepresented a material fact; (2) the defendant knew the representation was false; (3) the claimant did not know the representation was false; (4) the defendant made the misrepresentation intending that the claimant act on it; and (5) damages resulted from the claimant's reliance. *Coors v. Security Life of Denver Ins. Co.,* 112 P.3d 59, 66 (Colo.2005); *accord Brody v. Bock,* 897 P.2d 769, 775–76 (Colo.1995). Implicit within these elements are the requirements that the claimant demonstrate that it relied on the misrepresentation and that its reliance was justified under the circumstances. *See Robert K. Schader, P.C. v. Etta Indus., Inc.,* 892 P.2d 363, 366 (Colo.App.1994).

Whether Buyer justifiably relied on the alleged misrepresentation was a ques-

tion of fact. *See Carlson v. Garrison,* 689 P.2d 735, 737 (Colo.App.1984); *Varady v. White,* 42 Colo.App. 389, 391, 595 P.2d 272, 273 (1979). We review a district court's findings of fact for clear error. *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1384 (Colo. 1994); *Gebhardt v. Gebhardt,* 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979); *Page v. Clark,* 197 Colo. 306, 313, 592 P.2d 792, 796 (1979). Such a finding is clearly erroneous only if there is nothing in the record to support it. *M.D.C./Wood,* 866 P.2d at 1384; *Page,* 197 Colo. at 313, 592 P.2d at 796.

The court's finding that Buyer had full knowledge of the written lease and its terms before the closing is amply supported by the record. Indeed, Buyer does not appear to contest that point. Therefore, the district court did not clearly err in finding that Buyer could not have justifiably relied on Seller's alleged misrepresentation. *M.D.C./Wood,* 866 P.2d at 1382 (a party has no right to rely on a misrepresentation if it has "access to information that was equally available to both parties and would have led to the true facts"); *Nielson v. Scott,* 53 P.3d 777, 780 (Colo.App.2002) (where the plaintiff had actual knowledge of the truth or was put on inquiry notice, he could not justifiably rely on the defendant's misrepresentation); *see Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.,* 57 P.3d 738, 749 (Colo.App.2002) (the plaintiff did not reasonably rely on the defendant's misrepresentation where it was on inquiry notice). Buyer's argument to the contrary essentially requests that we reweigh the evidence and substitute our judgment for the fact finder's. We reject that request.

## III. Seller's Cross–Appeal

Seller contends that the district court erred in concluding that it breached the RPA, APA, and Warranty Deed by conveying the real property subject to the lease. We agree with Seller that it did not breach the APA, but reject its contentions as to the RPA and Warranty Deed.

In reviewing the district court's findings on breach of contract claims, we defer to its factual findings if supported by the rec-

ord, but review its legal conclusions de novo. *Albright v. McDermond,* 14 P.3d 318, 322 (Colo.2000); *Campbell v. Summit Plaza Associates,* 192 P.3d 465, 475 (Colo.App.2008).

## A. RPA

In paragraph 5.01 of the RPA, Seller warranted that it would "transfer the Property free and clear of all liens and encumbrances other than those agreed to pursuant to paragraph 4.01. . . ." Paragraph 4.01 referred to a schedule of exceptions noted in the title commitment and property conditions noted in the survey, neither of which identified the lease. Therefore, the district court concluded that because the lease constituted an encumbrance on the property, Seller breached the RPA.

Seller contends that the RPA does not cover the Bar Property, and therefore the lease could not be an encumbrance subject to paragraph 5.01. This contention fails.

Paragraph 1.01 of the RPA states, in relevant part: "Seller agrees to sell and convey unto [Buyer] . . . [property] commonly known as Loveland RV Village, 4421 East Highway 34, Loveland, Colorado 80537." Although the RPA does not expressly refer to the Bar Property's address, Buyer's representative testified that he drafted the RPA under the impression that the RV Property and the Bar Property shared the same address. The Warranty Deed itself uses only the RV Property address, but, all parties agree, conveyed both parcels. There was also testimony that "Loveland RV Village" is commonly understood to comprise both the RV Property and the Bar Property. Indeed, paragraph 1.7(d) of the APA, which the parties executed at the same time as the RPA, characterized the RPA as covering "the land and improvement[s] at the three parcels commonly know[n] as Loveland RV Village 4421 East Highway 34 Loveland, Colorado 80537. . . ." [7] *See Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 517 (Colo.App.2006) (documents that are part of the same transaction should be read together to determine the parties' intent). Further, it is undisputed that both parties intended the

---

**7.** The parties have not explained why the APA refers to three parcels rather than two.

**1118**

sale to include both parcels. *See Copper Mountain, Inc. v. Indus. Systems, Inc.,* 208 P.3d 692, 697 (Colo.2009) ("The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties."). Therefore, the district court did not clearly err in finding that the RPA covered the Bar Property. *See Sunshine v. M.R. Mansfield Realty, Inc.,* 195 Colo. 95, 98, 575 P.2d 847, 849 (1978) (when there is only one reasonable meaning of the contract's terms under the circumstances, both parties are bound by that meaning); *Brush Creek Airport,* 57 P.3d at 745 (same).

■ We also reject Seller's contention that Buyer waived its right to object to the lease pursuant to paragraph 4.01. As relevant here, that paragraph provides that Buyer would have a period to object in writing to any "Schedule B exceptions [in the title commitment] or any condition of the Property as revealed by the Survey." If Seller failed to remove any such objection within ten days, Buyer could terminate the RPA or "waive, in writing, any such Objection and proceed to closing." Here, the lease was not included in the Schedule B exceptions nor was it revealed in the Survey. Therefore, by its own terms, paragraph 4.01 does not apply to the lease.

■ Lastly, Seller contends that Buyer waived any right to claim a breach of the covenant against encumbrances because it knew of the lease before closing. The law in Colorado is clear, however, that a buyer's mere prior knowledge of an encumbrance does not preclude an action for breach of a covenant against encumbrances. *Moddelmog v. Cook,* 138 Colo. 152, 156, 330 P.2d 1113, 1115 (1958); *Eriksen v. Whitescarver,* 57 Colo. 409, 411–12, 142 P. 413, 414 (1914); *Downtown Parking,* 524 P.2d at 631; *see also Reinhardt v. Meyer,* 153 Colo. 296, 301, 385 P.2d 597, 600 (1963) (the grantee's pre-existing knowledge that the grantor's title was defective did not preclude the grantee from asserting or recovering under a breach of warranty claim); *Powell* § 81.03[3].[8] It is only where the buyer demonstrates an intent

to accept the encumbrance that it waives the right to claim a breach. *See Moddelmog,* 138 Colo. at 156, 330 P.2d at 1115; *Eriksen,* 57 Colo. at 411, 142 P. at 414. This intent is most often found in the contract for sale or the deed, which may except an encumbrance from the covenant, but may also be demonstrated by the parties' conduct, such as where the existence of the encumbrance is factored into the purchase price. *See Hawkins v. York,* 2 Cal.App.3d 98, 82 Cal.Rptr. 434, 438–39 (1969); *Alumni Ass'n v. Hart Agency, Inc.,* 283 N.W.2d 119, 121–22 (N.D. 1979); *Powell* § 81A.06[3]. The district court found no such conduct here.

### B. APA

■ We agree with Seller's contention that the district court clearly erred in finding that Seller breached the APA.

By its terms, the APA covers Buyer's purchase of Seller's tangible and intangible assets (collectively referred to as the "Acquired Assets"). Though the APA's list of Acquired Assets is expressly nonexclusive, the types of assets listed do not include the real property itself. The purchase of the real property was covered by a separate document, the RPA (which the APA expressly acknowledges). The Seller's promise in section 2(f) of the APA to convey the Acquired Assets "free and clear of all encumbrances" therefore was not breached by the existence of the lease. Simply put, the lease, though an encumbrance on the real property, was not an encumbrance on the Acquired Assets.

### C. Warranty Deed

■ The Warranty Deed warranted that the property was "free and clear from all ... encumbrances ..., except ... those listed specific Exceptions described in attached Schedule B, Section 2. . . ." The Schedule B, Section 2 exceptions did not include the lease. Nonetheless, Seller contends that Buyer waived its right to claim a breach of warranty by virtue of the existence of the lease because it knew about the lease before the closing. We have rejected this argument with respect to the RPA, and it carries no greater force in this context.

---

**8.** The division in *Campbell,* 192 P.3d at 475, quoted an Illinois case stating that knowledge of an encumbrance waives the defect. The state-ment in *Campbell* is clearly dictum and, if taken to refer to an encumbrance such as a lease, is contrary to controlling precedent in Colorado.

### D. Indemnification

Seller's challenge to the court's determination that it must indemnify Buyer for the attorney fees Buyer was ordered to pay Tenant is based solely on its contentions that it did not breach the RPA, APA, or Warranty Deed. Because we have concluded that the district court did not err in finding that Seller breached the RPA and the Warranty Deed, Seller's challenge to the district court's ruling on Buyer's indemnification claim necessarily fails.

### IV. Buyer's Request for Attorney Fees on Appeal

We deny Buyer's request for an award of its attorney fees incurred on appeal. As noted above, the indemnity provisions on which Buyer relies do not permit an award of attorney fees in actions between the indemnitee and the indemnitor. *See Regency Realty Investors,* —— P.3d at ——.

The judgment is reversed as to breach of the asset purchase agreement and affirmed in all other respects. The case is remanded to the district court for further findings on Buyer's damages.

Judge TAUBMAN and Judge RICHMAN concur.