Argued and submitted April 4, affirmed in part, reversed in part and remanded
July 2, 1986

CAMPBELL et al,
*Respondents - Cross-Appellants,*

*v.*

KARB et al,
*Appellants - Cross-Respondents.*

(16-79-06435; CA A31334)

721 P2d 881

Kurtis M. Lombard, Eugene, argued the cause for appellants - cross-respondents. With him on the briefs were Herb Lombard and Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

James Ehrlich, Eugene, argued the cause for respondents - cross-appellants. With him on the briefs was Larry O. Gildea, P.C., Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

### WARREN, J.

This is an action for breach of a covenant against encumbrances that arose from the sale of real property. Defendants appeal the judgment in favor of plaintiffs, and plaintiffs cross-appeal for additional damages. We reverse in part and affirm in part on the appeal and affirm on the cross-appeal.

A detailed statement of the facts is necessary to an understanding of the issues. Defendants owned a piece of country property onto which they moved a mobile home and built other buildings. The improvements were near what they considered to be the property's north boundary, which they shared with International Paper Company (IP). In 1972 or 1973, while defendants were in possession of the land, an IP representative and defendant Henry L. Karb (Karb) discussed the fact that the north boundary line was uncertain, but the IP representative indicated that IP was unconcerned about the uncertainty, because a trade of parcels could be completed if the location of the boundary line ever became a problem.

In 1976, defendants sold the property to plaintiffs by a land sale contract that contained a covenant against encumbrances. Karb informed to plaintiff William D. Campbell (Campell) of the substance of the 1972 or 1973 conversation with the IP representative regarding the uncertainty of the north boundary line and IP's lack of concern over the line's exact location. The sale was consummated without either defendants or plaintiffs having a survey made.

In late 1979 or early 1980, an unlicensed surveyor performed a rough survey at plaintiffs' request to determine their west boundary and in the process flagged the north line as running through plaintiffs' improvements. Campbell telephoned Karb and asked what he would do about the problem. Karb suggested that Campbell talk to IP. In January, 1980, Campbell called IP and inquired into IP's willingness to share the cost of a survey of their common boundary, because plaintiffs' improvements might be partially on IP land. An IP representative met with Campbell and discussed dividing the cost of a survey based on the benefit to each of the property owners. Campbell told the IP representative that he could not afford to pay for the entire survey, but would split the cost of surveying the boundary. IP contracted for the survey, which

revealed that plaintiffs' improvements, in fact, encroached on IP's land. IP billed plaintiffs for what it claimed was their share of the survey cost, $6,945, leaving IP's share as $796. Plaintiffs never paid the bill and continually maintained that they had not agreed to pay any specific amount of the survey expense.

On June 29, 1979, plaintiffs filed a complaint against defendants for breach of covenant against encumbrances due to the encroachment onto IP land. Plaintiffs later filed a complaint against IP seeking damages for timber trespass and slash removal that resulted when IP's logging operations strayed over the true boundary dividing the properties. IP denied the timber trespass and slash removal claims and counterclaimed for ejectment and damages of $6,945, which it claimed was plaintiffs' share of the cost of the survey. The two cases were consolidated for trial, and the Campbell-IP dispute was settled shortly before the trial in this case. Under the terms of the settlement, all claims, including the timber trespass, slash removal and claim for survey costs, were forgiven. IP conveyed one-half acre of land to plaintiffs to cure the encroachment, and IP paid plaintiffs $2,500. The case then proceeded against defendants to an award of damages for the breach of the covenant against encumbrances.

■ Defendants raise numerous assignments of error. First, they contend that they did not breach the covenant, because they had acquired title to the property by adverse possession; therefore, there was no encroachment. They argue that, by showing that the total time that they and plaintiffs together were in possession of the disputed parcel was longer than the statutorily required ten years, they established a *prima facie* case of adverse possession. Plaintiffs then had the burden to show that ownership was not acquired by adverse possession, thus proving encroachment and their case of breach of covenant against encumbrances. We review the evidence of adverse possession *de novo* and agree with the trial court that possession was not adverse. Both defendants and plaintiffs occupied the disputed parcel with IP's permission. Permissive possession can not ripen into title.

■ Next, defendants argue that the evidence is insufficient to support an award of damages and that the amount of any damages is speculative. When a party entitled to title free

from encumbrances is required to remove the encumbrance, it is entitled to indemnity for the reasonable cost of removing it. Here, plaintiffs claim that, because they had to settle their tort claims with IP, the cost of cure was the value of what they gave up to gain the settlement, *i.e.,* the timber trespass and slash removal claim and the cost of the survey, plus the costs incurred in reaching settlement, including attorney fees.

The questions of indemnity and the amount of damages are legal, not equitable, and we will affirm the trial court if its findings are supported by the evidence. The trial court found, and its findings are supported by the evidence, that although IP had committed a timber trespass and should be required to remove slash, evidence of the value of either the timber trespass claim or the slash removal claim was speculative. The trial court properly refused to award damages on that basis. However, it erred in awarding plaintiffs the amount claimed as the cost of survey. As part of the settlement, IP waived its claim that plaintiffs owed it for the survey expense. Although it is not certain whether plaintiffs were ever actually liable for the cost of the survey, they received a *benefit* by the release of the alleged obligation. It is incomprehensible how they can assert that defendants should reimburse them for the loss of a claim against them, on which they could not recover but might have been held liable.

Defendants object on several grounds to the trial court's allowance of testimony by plaintiffs' former attorney regarding settlement negotiations between plaintiffs and IP. Their arguments are without merit. First, the attorney no longer represented plaintiffs at the time of trial; therefore, there was no violation of OEC 606-1. Second, evidence of the reasonable cost of defense expenses, incurred because of defendants' breach, may be established by the attorney who provided the service. In addition, evidence about settlement negotiations between IP and plaintiffs was pertinent to the cost of removing the encumbrance and was properly allowed. The trial court awarded $10,000 damages as defense expenses incurred to obtain settlement with IP. The evidence supported an award in that amount, and we will not substitute our judgment for that of the trial court.

On cross-appeal, plaintiffs challenge as insufficient the amount of damages awarded. We have already concluded

that the value of the timber trespass and slash removal claim is too speculative to be awarded as damages. We have also concluded that the survey cost is not recoverable in this action. The only element of damages supported by the evidence is the amount of attorney fees as determined by the trial court. Accordingly, we affirm on the cross-appeal.

Affirmed in part, reversed in part and remanded for entry of a new judgment not inconsistent with this opinion; affirmed on cross-appeal.