Argued and submitted May 28, 1986, affirmed as modified February 25, reconsideration denied April 24, petition for review denied June 2, 1987 (303 Or 483)

MIKKELSON,
*Appellant - Cross-Respondent,*

*v.*

CONSER,
*Respondent - Cross-Appellant.*

(83-1714; CA A35442)

733 P2d 106

Gary E. Norman, Albany, argued the cause for appellant-cross-respondent. With him on the brief was Scott & Norman, P.C., Albany.

Laurence E. Thorp, Springfield, argued the cause for respondent-cross-appellant. With him on the brief was Thorp, Dennett, Purdy, Golden & Jewett, P.C., Springfield.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff brought this action for a dissolution of a partnership, an accounting of funds removed from the partnership and other relief. In 1972, plaintiff and defendant started a business called "Self-Stor," a mini-storage warehouse business. Defendant, a real estate broker, developed the concept and was to perform most of the management functions. Plaintiff provided the financial statement to secure funding. The business expanded, and in 1977 the parties entered into a written partnership agreement. By 1980, Self-Stor had units in Corvallis, Eugene, McMinnville, Salem, Bend and Albany. By late 1980, the expansion phase of the business had ended.

Although the partnership agreement stated that neither partner was to receive compensation unless all partners agreed in writing, defendant was paid a management fee of about $60,000 a year from 1977 until 1981 for his work in managing the construction and operation of the storage complexes. The partners disagreed about the amount to be paid to defendant, but in April, 1981, they agreed on defendant's compensation up to that time, and in May a management firm was hired to oversee the daily operations of the complexes.

After May, 1981, defendant continued to perform some management functions on behalf of the partnership. He repeatedly contacted plaintiff to negotiate a compensation agreement. Although plaintiff did acknowledge that some compensation was appropriate, plaintiff refused to enter a written agreement. In June, 1983, a few weeks after the partnership sold the Salem Self-Stor facility and received $1,450,000 in cash, defendant withdrew over $198,000 of the sale funds, from which he paid partnership expenses, including management fees he claimed were owed to him, and $25,000 to his brother Neal, and then purchased a $100,000 certificate of deposit in the name of Self-Stor. Defendant did not tell plaintiff that the certificate was in the Self-Stor name. Instead, he sent a letter "accounting" for the funds, including a payment of $100,000 to himself for "25% appreciation" on the Salem Self-Stor.

Plaintiff filed this action in November, 1983, seeking to have defendant account for partnership assets, dissolution

of the partnership, determination of defendant's interest pursuant to ORS 68.600(2)(c)(B)[1] and attorney fees. Defendant counterclaimed, asking for a reasonable management fee for services from July 1, 1981, a brokerage commission of $84,900, brokerage commissions on any partnership property sold as a result of the dissolution and equal distribution of the remaining assets. After this action was filed, defendant applied the certificate of deposit to amounts which he contends were due to him for a real estate commission on the sale of the Salem facility.

Each party argues that the actions of the other constituted a "voluntary withdrawal" from the partnership, entitling the remaining partner to purchase the interest of the withdrawing partner according to the terms of their agreement. Defendant, relying on *Hunter v. Straube,* 273 Or 720, 543 P2d 278 (1975), and *Clark v. Allen,* 215 Or 403, 333 P2d 1100 (1959), argues that plaintiff's filing of his action constituted a withdrawal. Those cases are distinguishable, because, in both, the court concluded that the plaintiff's substantive claims were without merit and that the action to dissolve the partnership had been filed solely as a means of avoiding application of the provisions of the partnership agreement governing withdrawal of a partner. In this case, we conclude that plaintiff's substantive claims have merit and that the action was not filed solely as a means of avoiding application of the withdrawal provisions of the partnership agreement.

Plaintiff, also relying on the *Hunter* and *Clark* cases,

---

[1] ORS 68.600(2) provides, in part:

"(2)  When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

"* * * * *

"(c)  A partner who has caused the dissolution wrongfully shall have:

"* * * * *

"(B)  If the business is continued under paragraph (b) of subsection (2) of this section, the right as against copartners and all claiming through them in respect to their interests in the partnership, to have the value of the interest of the partner in the partnership, less any damages caused to copartners by the dissolution, ascertained and paid to the partner in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered."

argues that defendant's withdrawal of the $198,000, as well as his earlier indication that, if matters were not resolved, he wanted to dissolve the partnership, amounted to a withdrawal from the partnership. Again, we conclude that defendant's action was not taken to avoid the application of the withdrawal provisions, and we do not find that his acts amounted to a withdrawal. We concur in the trial court's analysis:

> "Each party in its argument asks the Court to enforce the terms of the partnership agreement and to find that the other party, by his actions, has effected an election to withdraw. Both plaintiff and defendant are partially responsible for their dilemma. While it may be argued that one partner's conduct is more onerous than the other, it is not appropriate to reward the other party. Dissolution is appropriate under ORS 68.540(f). The partnership cannot successfully continue because the two partners will not or cannot reconcile their respective positions. The partnership is paralyzed."

The trial court had the power to dissolve the partnership. ORS 68.530(6). On *de novo* review, we agree with the trial court.

Plaintiff also challenges the sufficiency of the evidence for awarding defendant $36,000 for compensation as managing partner. It is clear from the record that after April, 1981, plaintiff recognized that defendant should be compensated for some of his work on behalf of the partnership, although the amount could not be agreed upon. Plaintiff argues, however, that defendant's evidence showed only what defendant believed he should be paid and that, therefore, there was no evidence from which the trial court could determine the actual value of the services.

■ The trial court specifically rejected defendant's basis for compensation of $73,000, which he had calculated from the pay of a managing general partner in Shur-Gard, a competitor in the mini-warehouse industry. However, the trial court also had before it the record of the past compensation paid to defendant and evidence as to services performed after the April, 1981, compensation agreement. The trial court's determination of compensation owed for almost two years' service was not without foundation and, on *de novo* review, we agree with the trial court's award.

■ We agree with plaintiff, however, that the trial court erred in awarding defendant $84,900 as a sales commission for

the 1983 sale. The only support for defendant's claim that he was entitled to a commission was that the partners had paid him for sales of property in 1979 and 1980 and that the listing agreement of May 5, 1983, for the Salem property provided for a commission to defendant. The language in the agreement provides that a commission would be paid on the terms of the listing or "such other terms and price as [the partners] may accept."[2]

In his letter explaining the withdrawal of the $198,000, defendant did not mention any claim to a commission. The first time he asserted a right to a commission was in his counterclaims in this action. Further, the final documents regarding the sale of the property show that no commission was claimed. Defendant signed a letter of intent, which states that "there are no real estate sales commissions or finder's fees arising by virtue of this transaction * * *." The letter was accompanied by correspondence from the purchaser, stating, "I might suggest your evaluation of this offer should bear in mind the fact that no real estate commissions are involved in this transaction." In addition, defendant signed an affidavit that "Self-Stor has not paid and will not pay any fees or commissions." We are not convinced by defendant's arguments that the documents were signed solely for the benefit of the purchaser and for tax benefits for the partnership. Defendant did not prove that he was entitled to a commission.

Plaintiff assigns as error the trial court's refusal to require an immediate accounting for certain funds as of the time of trial, independently of the partnership winding up. As a general proposition, in an action for an accounting, the complaint must allege that the plaintiff demanded an accounting and was refused, unless the desired accounting is merely ancillary to the main purposes of the action. *McDonough v. Southern Or. Mining Co.,* 177 Or 136, 157, 159 P2d 829, 161 P2d 786 (1945); *Kaufmann v. Nolan,* 81 Or App 237, 724 P2d 912, *rev den* 302 Or 460 (1986). The claim for an accounting is not ancillary to the main purposes of the action. Plaintiff's complaint alleged that defendant had removed "more than

---

[2] The evidence shows that the parties had abandoned this agreement. The listing was for the sale of a one-half interest in the property which did not materialize. Defendant then tried to work out an exchange of properties, which also did not materialize. The entire property was finally sold.

$197,000" from the partnership, asked for dissolution of the partnership and that defendant be required to account for the assets removed. On appeal, plaintiff's claim for an accounting arises out of testimony at trial regarding expenditures by the partnership before the action was filed. Those amounts are not related to defendant's removal of the $198,000, nor are they related to any accounting which may result from the winding up of the partnership's business.

■　　　　Plaintiff failed to allege a claim for an accounting of partnership assets as of the time of trial. He did not demand an accounting, and he was not refused access to the financial records of the partnership. The trial judge did not err in refusing an accounting.[3]

■　　　　In his cross-appeal defendant argues that the trial court erred in requiring him, rather than the partnership, to pay Neal $25,000. Neal had provided services toward converting the Salem property into a condominium, and defendant argues that he had the authority unilaterally to hire and pay him under the partnership agreement:

> "To provide for ease in the operation of the partnership business, any partner may incur indebtedness on behalf of the partnership, or withdraw funds from the partnership accounts, up to $25,000 in any one transaction."

Although, generally speaking, a partner may incur indebtedness or withdraw funds, those actions must be taken on behalf of the partnership. The trial court concluded, and we agree, that defendant did not meet his burden of showing that Neal's efforts were for the benefit of the partnership. The $25,000 payment was defendant's after-the-fact use of the maximum withdrawal to compensate his brother for an arrangement between only the two of them.[4]

Judgment modified to delete credit of $84,900 to

---

[3] Plaintiff claims that the trial court erred in denying him attorney fees. He has shown no basis for the trial court to make an award.

[4] Defendant urges on cross-appeal that "equity" entitles him to be paid commissions on the sale of partnership assets in the dissolution. We do not agree. Defendant's commissions in the past were based on agreements, and the partners had no ongoing understanding of brokerage commissions which defendant would receive.

We also reject defendant's request on cross-appeal to award him management fees from the time of trial until a receiver was appointed in April, 1985. Defendant made no such request to the trial court.

defendant; otherwise affirmed on appeal and on cross-appeal.