Argued and submitted July 22, reversed on appeal and remanded in part; otherwise
affirmed on appeal and cross-appeal October 26, reconsideration denied December 2,
petition for review denied December 20, 1988 (307 Or 245)

MOINI et ux,
*Appellants - Cross-Respondents,*

*v.*

HEWES,
*Respondents - Cross-Appellants.*

(CR 84-0350; CA A45972)

763 P2d 414

J. F. Ouderkirk, Newport, argued the cause for appellants - cross-respondents. With him on the briefs was Richardson, Ouderkirk & Hollen, Newport.

Jim Hilborn, Florence, argued the cause and filed the briefs for respondents - cross-appellants.

Before Warden, Presiding Judge, Graber, Judge, and Van Hoomissen, Judge pro tempore.

GRABER, J.

## GRABER, J.

In this contract action, defendants argue that there was no contract and that, even if there were, there was no evidence of breach or damages. The jury returned a verdict for plaintiffs, the trial court entered judgment notwithstanding the verdict for defendants, and plaintiffs appeal.[1]

On appeal from a judgment *n.o.v.,* we must reinstate the jury verdict unless we can affirmatively say that there is no evidence to support it. *Jacobs v. Tidewater Barge Lines,* 277 Or 809, 811, 562 P2d 545 (1977); *see also Hillstrom v. McDonald's Corporation,* 88 Or App 444, 448, 746 P2d 222 (1987), *rev den* 305 Or 103 (1988). We view the evidence and all inferences derived from it in the light most favorable to plaintiffs, because they prevailed before the jury. *Jacobs v. Tidewater Barge Lines, supra.* We state the facts in accordance with that standard.

Plaintiffs manufacture candy. Defendants operated a candy store and bought candy from plaintiffs. Plaintiffs rely on a written "Agreement," paragraph 3 of which provides:

> "*INVENTORY:* West Candies agrees to supply Purchasers with at least sufficient candies to enable Purchasers to maintain stock on hand equal to or greater than that itemized in the attached 'EXHIBIT A' which is incorporated by this reference. Purchasers agree to maintain inventory in their retail outlet equal to or greater than that represented in 'Exhibit A' and agree to keep their showcase adequately stocked at all times. Purchasers agree that their entire inventory of candies and other confectionary products will be purchased through West Candies."

No "Exhibit A" was attached.

The agreement provided that it went into effect on April 1, 1982. The first deliveries of candy occurred during March and April, 1982, and defendants received an invoice with each delivery. Plaintiffs testified that the parties agreed that those initial deliveries would define the minimum inventory level and that the invoices would, taken together, constitute "Exhibit A."

Defendants argue, *inter alia,* that there was no

---

[1] We affirm on the cross-appeal without discussion.

Exhibit A when the parties entered the agreement, that their later conduct cannot be used to define Exhibit A, and, therefore, that the contract fails for indefiniteness. Defendants rely on paragraph 11 of the agreement, which provides:

"*INTERPRETATION:* This writing is intended by the parties to be a final, exclusive, and complete expression of their agreement and its terms. No course or [*sic*] prior dealings between the parties and no usage of the trade shall be relevant to supplement or explain any term used herein. Acceptance of, or acquiescence in, a course of performance rendered under this agreement shall not be relevant to determine the meaning of this agreement even though the accepting or acquiescing party has knowledge of the nature of the performance and an opportunity to object."

■ ■   Although normally a course of performance is relevant to the interpretation of a sales contract, *see* ORS 72.2020 and ORS 72.2080, the parties may, by agreement, preclude such interpretation. ORS 71.1020(3); *Can-Key v. Industrial Leasing,* 286 Or 173, 178, 593 P2d 1125 (1979). Here, the parties have done so. Paragraph 11 prohibits reliance on course of performance to determine the meaning of the agreement. Therefore, course of performance, including the initial candy deliveries, cannot be used to define Exhibit A. Plaintiffs offered no other definition of Exhibit A.

■ ■   That does not mean, however, that there was no contract at all between the parties. In paragraph 3, defendants made three separate promises to plaintiffs: (1) to maintain stock equal to or greater than that listed in Exhibit A; (2) to keep the showcase adequately stocked at all times; and (3) to purchase all of their store's candy from defendants.

Because there was no Exhibit A, the first promise is too indefinite to form the basis for a contract and is not enforceable. The latter two promises are sufficient to support a contract. Whether they are severable from the first promise, thereby making the contract divisible, depends on the intention of the parties as reflected in the words that they used. *See George v. School Dist. No. 8R,* 7 Or App 183, 188, 490 P2d 1009 (1971). Paragraph 3 requires defendants to perform three separate acts, which are neither interrelated nor interdependent. The agreement as a whole makes sense even in the absence of the promise related to Exhibit A. Accordingly, we conclude

that the contract is divisible and that the second and third promises are enforceable.

The remaining question is whether there is any evidence to support the jury's verdict. We quote the special verdict form, in pertinent part:

"We, the Jury, find:

"1. Was there a valid binding contract between the plaintiffs and defendants in this case? *Yes* * * *;

"* * * * *

"2. Did the defendants or one of them breach their contractual obligation to plaintiffs in one or more of the following particulars:

"a. By failing to maintain their inventory at the originally agreed upon level? *Yes* * * *;

"b. By failing to purchase their inventory of candies and other confectionary items exclusively from plaintiffs? *No* * * *;

"c. By failing to keep their showcase adequately stocked? *Yes* * * *;

"d. By failing to completely pay for product delivered by plaintiffs? *Yes* * * *;

"e. By terminating the agreement without plaintiffs['] consent before the term of the agreement had run? *Yes* * * *.

"* * * * *

"3. Were the plaintiffs damaged as a result of one or more breaches by defendants or one of them? *Yes* * * *

"* * * * *

"4. What are plaintiffs' damages as a result of the contract breaches you have determined? *$7,437.05* * * *."

The jury's finding that defendants failed to maintain their inventory at the "originally agreed upon level" cannot stand, because the nonexistence of Exhibit A means that there was no proof of an "originally agreed upon level." Thus, as to that alleged breach, judgment *n.o.v.* was proper, because there is no evidence to support the verdict.

With regard to the finding that defendants failed to keep their showcase adequately stocked, there was no evidence that plaintiffs suffered damage due to that breach. Damage is an essential element of any breach of contract

action. *Wm. Brown & Co. v. Duda.,* 91 Or 402, 406, 179 P 253 (1919). Accordingly, judgment *n.o.v.* was proper as to that finding of breach. For the same reason, that is, there was no evidence of damages, judgment *n.o.v.* was proper as to the jury's finding that defendants terminated the contract without plaintiffs' consent.[2]

One finding is supported by evidence, however. The jury found that defendants failed to pay for some of the candy that plaintiffs had delivered to them. There was evidence—a stipulation, an exhibit, and testimony from one of the plaintiffs—that defendants did not pay for all of the candy that plaintiffs had delivered and that the value of the candy not paid for was $647.32.

A remand for a determination of damages for that breach is unnecessary. The *only* evidence was that defendants' failure to pay for goods delivered damaged plaintiffs in the amount of $647.32. Accordingly, we direct the trial court to enter judgment for plaintiffs on the jury verdict in the amount of $647.32 but otherwise affirm the judgment in all respects. Or Const, Art VII, § 3 (amended).

Reversed on appeal and remanded with instructions to reinstate the verdict for plaintiffs for $647.32 and for such further proceedings as appropriate; otherwise affirmed on appeal and on cross-appeal.

---

[2] There was evidence of projected future payments over the original term of the agreement. However, the evidence was premised on an "originally agreed upon level," which was tied to the initial candy deliveries. As discussed above, paragraph 11 precludes reliance on that course of dealing.