Argued and submitted July 9, 1997; resubmitted En Banc February 11, petition for review denied July 14, 1998 (327 Or 431)

Linda L. FOGH,
*Appellant,*

*v.*

Errol R. McRILL,
*Respondent.*

(16-95-05218)

Errol R. McRILL,
*Respondent,*

*v.*

Linda L. FOGH,
*Appellant.*

(16-95-05220; CA A94266)

956 P2d 236

R. Daniel Lindahl argued the cause for appellant. With him on the briefs was Bullivant, Houser, Bailey, Pendergrass & Hoffman, P.C.

James C. Jagger argued the cause and filed the brief for respondent.

HASELTON, J.

Warren, J., concurring in part, dissenting in part.

Edmonds, J., concurring in part, dissenting in part.

## HASELTON, J.

Plaintiff appeals the judgment after a trial to the court in these consolidated cases.[1] In her complaint, plaintiff sought to recover damages for defendant's alleged breach of a partnership agreement (the agreement) by which they jointly owned the house that they occupied, to dissolve the partnership, to require defendant to repay loans that plaintiff made to him, and to recover damages for defendant's alleged conversion of several items of plaintiff's personal property. Defendant counterclaimed for damages arising from plaintiff's alleged breaches of the agreement and, in a separate action, sought damages for plaintiff's alleged conversion of a large amount of camera equipment and related business records.

The trial court found that both parties had materially breached the partnership agreement, ordered the home sold, gave plaintiff judgment for some but not all of the amount she claimed for her loans to defendant, and gave defendant judgment for damages for breach of the agreement and for conversion. It denied plaintiff's other claims and both parties' claims for attorney fees under the agreement. Because we conclude that the court erred in its disposition of defendant's conversion claim, we reverse the award of damages on that claim and remand for entry of an amended judgment.

Plaintiff and defendant are both in their 50s. In 1993, they agreed to live together in a house that they would purchase jointly, using plaintiff's money for the down payment. Before they purchased the house, they entered into the agreement, which refers only to purchasing the house and managing the resulting financial obligations. The agreement, which was drafted by plaintiff's attorney, does not refer to using the house for business purposes and contains an integration clause.

---

[1] Linda Fogh and Errol McRill filed separate actions against each other. The trial court consolidated the actions for trial and entered a single judgment, which is the subject of this appeal. The court treated the action in which Fogh was the plaintiff and McRill was the defendant as the lead case. We will refer to the parties by their status in that case.

At the time of the purchase, defendant's primary income came from his business of buying, selling, and trading used cameras and other photographic equipment. Before defendant and plaintiff began living together, he had operated the business out of his previous home. Although defendant told plaintiff that he would find a commercial location, he instead moved the business, together with the accompanying inventory, into the house that they purchased. After plaintiff and defendant moved in, the house became a center of business activity in a residential neighborhood. Customers frequently came to buy and sell equipment, and the inventory grew, to take over more and more of the house.[2] Because much of defendant's business was on a cash basis, and because he was often short of cash, he frequently borrowed from plaintiff for business purposes. He repaid some, but not all, of those loans.

Defendant's use of the house for his camera business became an increasing source of tension between the parties. In December 1994, plaintiff told defendant that she could no longer take it; defendant agreed that their relationship was not working. Plaintiff thereafter became disturbed that defendant seemed to be taking no action to move either himself or his business out of the house. In March 1995, while defendant was temporarily away from their house, plaintiff moved his clothes from the jointly occupied master bedroom to a smaller bedroom, placing a foam mattress in that bedroom for his use. When defendant returned, he moved a large, heavy table out of the bedroom in order to make room for himself. In the process, he got into an altercation with plaintiff in which, she believed, he pushed the table into her.

Plaintiff was already upset by a perceived lack of security arising from the large number of people who came to the house on defendant's business, by the decreasing amount of space for her own activities, and by the damage that defendant's other actions and his cats had done to the house. She is

---

[2] As plaintiff explained:

"It just progressed to more and more people, more and more phone calls, more and more cameras. It just took over our lives. There was no aspect of our home life that didn't involve cameras. * * * One particular morning I took a shower with a tripod."

much smaller physically than defendant and began to be afraid of him. She also believed that he was listening to her telephone conversations.

In May 1995, there was another incident, in which plaintiff and defendant exchanged harsh words and defendant splashed water on plaintiff. Immediately thereafter, plaintiff applied for, and received, a temporary restraining order under the Family Abuse Prevention Act, requiring defendant to leave the house. Plaintiff then changed the locks and did not give defendant new keys. After an evidentiary hearing, the court, at the suggestion of defendant's counsel, extended the temporary restraining order for 60 days to give the parties an opportunity to resolve their differences. At the end of that time, the court dismissed the case.

The restraining order gave defendant 72 hours to reclaim his camera inventory. When he did not do so within that time, plaintiff had his belongings, including the camera equipment, packed and moved to a storage facility, at a cost to her of over $4,000. Her attorney soon afterwards provided the claim check to defendant's attorney. Because defendant lived in a motel until he found a house in August, he had no place for his inventory and therefore left it in storage. When defendant eventually reclaimed his inventory, he discovered that it was badly disorganized and was difficult to use for business purposes without extensive reorganization. The combination of his inability to use the inventory between mid-May and August and the need to reorganize it thereafter seriously damaged his business.

The trial court concluded that both parties had materially breached the partnership agreement—defendant by using the house for his camera business, thereby destroying the use of the house as a residence, and plaintiff by wrongfully removing defendant from the house and thus ousting him from the partnership property. The court held that those breaches invalidated the buy-out provisions of the agreement and required the winding up of the partnership. It ordered plaintiff to sell the house, with her equity to be paid from the proceeds. The court made three other determinations that are germane to this appeal: (1) The court found that plaintiff was entitled to a judgment for her unpaid loans

but reduced the amount of the judgment by $7,000 to reflect a payment that defendant had made. (2) The court both excused defendant from further payments on his obligations under the agreement and awarded him the cost of his motel expenses for the period after plaintiff obtained the restraining order. (3) The court also awarded defendant damages for conversion of his camera equipment and for lost profits from the interruption of his business.

■    Plaintiff's arguments on appeal assume that our review of factual matters underlying *all* of the trial court's rulings is *de novo*. She fails to recognize that, although some of the issues on appeal arise from the equitable claim for dissolution of the partnership, others arise from legal claims for breach of the agreement, failure to repay the loans, and conversion.[3] Our review of the facts in an equitable claim is *de novo,* ORS 19.415(3), but we review the facts in a legal claim tried to the court solely to determine whether there is any evidence to support the trial court's findings. ORCP 62 F; *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). With those principles in mind, we turn to plaintiff's assignments of error.

Plaintiff's first two assignments relate to the trial court's determination that defendant's actions did not justify plaintiff in evicting him from the house. The trial court refused to allow plaintiff to offer evidence to justify the eviction. It ruled that, because the restraining order court had dismissed the case after a full hearing, that court had necessarily found that there was no basis for the restraining order. For that reason, the trial court held, evidence on the facts behind the restraining order or other evidence of defendant's treatment of plaintiff was irrelevant to this case. Plaintiff argues that that holding was an improper application of claim preclusion and that, as a result of its exclusion of the evidence, the trial court lacked a factual basis to hold that plaintiff materially breached the agreement by evicting defendant.

---

[3] Even though an action to dissolve a partnership is equitable, an action for damages for breach of a partnership agreement may be a legal claim if it is separate from the action for dissolution, unless the relevant express stipulation in the agreement, the breach, or both involve the entire partnership business or accounts. *Birkemeier v. Orino*, 168 Or 385, 389, 123 P2d 185 (1942).

■ Because these assignments relate to the action to dissolve the partnership, our review of the evidence is *de novo*. The record in this case includes the record of the restraining order proceedings, including a transcript of the June hearing, and defendant's testimony in this case on cross-examination, in which he gave much of his view of the events. Because plaintiff did not identify any additional evidence, our review of the facts is limited to that evidence. On *de novo* review of the record, including the evidence of plaintiff's alleged abuse, we find that plaintiff did not have sufficient cause to oust defendant from his participation in the partnership property by obtaining the restraining order. Given that finding, we hold that, regardless of whether the trial court erred in applying claim preclusion principles, it was correct in concluding that plaintiff materially breached the agreement.

■ In her third assignment of error, plaintiff challenges the award to defendant of his motel expenses during the time after plaintiff evicted him from the house and before he found a new house. Plaintiff argues that that award gives defendant a double recovery, because the court also excused him from any liability for partnership expenses after the entry of the restraining order. Plaintiff does *not* challenge that latter action, nor does she challenge the amount of the award. Because plaintiff presents only the legal question of whether the court's award of damages constitutes a double recovery, we do not need to decide any factual issues and therefore review the issue as a question of law.

For the motel expenses to be an improper double recovery, they must cover the same loss as the partnership expenses that defendant did not have to pay. Defendant incurred the motel expenses as a direct result of plaintiff's breach of the agreement. It was, thus, proper to award him damages for those expenses. Plaintiff's argument is that defendant was already compensated for his loss by being excused from paying the partnership expenses. However, because plaintiff excluded defendant from the partnership property, he was not able to use it for his residence and had to incur the cost of alternative housing. The evidence suggests that the expenses for the house may have totaled $600 to

$700 a month, only half of which was defendant's share,[4] while the cost of the motel was $45 a day. Simply being excused from paying his portion of the expenses of the house, thus, was inadequate to cover all of defendant's damages arising from plaintiff's breach. At least *some* of the award of motel expenses was *not* a double recovery. Because plaintiff seeks only to overturn the award in its entirety, not to reduce its amount, we do not need to determine whether any part of it in fact represents a double recovery. We affirm on this assignment of error.

■   In her fourth and fifth assignments, plaintiff attacks the trial court's award of damages to defendant for conversion of the camera equipment. She argues that her actions did not constitute conversion and that, even if they did, the court improperly awarded damages both for the loss of use of the property and for lost profits. We conclude that plaintiff did not convert the property.

■   Conversion is an intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may be required to pay the full value of the chattel. *Restatement (Second) of Torts* § 222A (1958). A finding of conversion leads to a forced sale of the chattel to the tortfeasor. In *Mustola v. Toddy*, 253 Or 658, 456 P2d 1004 (1969), the Supreme Court adopted the *Restatement* approach for determining when a conversion has occurred. That approach involves the balancing of a number of factors, some of which the *Restatement* lists.[5] The *Restatement* factors are:

"(a)   the extent and duration of the actor's exercise of dominion or control;

"(b)   the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c)   the actor's good faith;

"(d)   the extent and duration of the resulting interference with the other's right of control;

---

[4] Plaintiff does not attempt on appeal to determine the exact amount of the expenses.

[5] The court decided *Mustola v. Toddy*, 253 Or 658, 456 P2d 1004 (1969), on a ground not included in the *Restatement*.

"(e)   the harm done to the chattel;

"(f)   the inconvenience and expense caused to the other." *Restatement (Second) of Torts* § 222A(2) (1965), *quoted in Mustola*, 253 Or at 664.

Most of the facts of this case are undisputed; to the degree that there are disputes, we resolve them in favor of defendant because of the judgment in his favor. Whether plaintiff's actions constituted conversion under those facts is a matter of law. *See Mustola*, 253 Or at 664 (deciding whether the facts of the specific case constituted conversion).

In this case, plaintiff exercised dominion or control over defendant's camera equipment for only a short time, from when she obtained the restraining order until her attorney gave defendant's attorney the storage ticket. Defendant had the opportunity to recover his equipment during at least part of that time, the period when it was still in the house. Although plaintiff did not intend to assert a right to the equipment that was inconsistent with defendant's right to control it, her obtaining the restraining order, which at the least limited defendant's access to the equipment, supports the trial court's implicit finding that she did not act in complete good faith. However, plaintiff did not interfere with defendant's right of control beyond the short period that she exercised dominion or control over the equipment and, at most, her actions caused only minor physical harm to it. Defendant's problems arose from his difficulty in finding alternative housing after he regained control over the equipment.

We conclude that plaintiff's interference with defendant's property did not amount to conversion. We note, particularly, that plaintiff's interference deprived defendant of the use of the equipment for only a short time and that plaintiff did not intend to assert a right over the equipment that was inconsistent with defendant's right of control. Although the equipment was in storage for several months, that was primarily the result of defendant's perceived need to find another house from which he could conduct his business, not of any lack of control over the equipment. *See Lee Tung v. Burkhart*, 59 Or 194, 116 P 1066 (1911) (landlord removed tenant's property to storage; interference was not sufficient

to support conversion); *Jordan v. Wilhelm*, 95 Or App 528, 770 P2d 74, *rev den* 308 Or 79 (1989) (the plaintiff recovered many of his chattels within two weeks, could have recovered all of them by paying back rent, and the defendants' actions did not damage the chattels or materially harm the defendant's law practice). The trial court's award of $7,767.63 for conversion of the stored equipment must be reversed.[6]

■ Finally, in her sixth assignment of error plaintiff argues that the trial court erred by reducing the amount of its award for the loans that defendant had not repaid by $7,000 in order to reflect a payment that defendant made. She argues that she had already credited defendant with that payment, describing precisely how she showed that credit on the documents that she submitted to the court. Because the loans are unrelated to the partnership business and, thus, to the equitable action to dissolve the partnership, plaintiff's claim to recover those amounts is an action at law. We review the trial court's findings to determine whether there is any evidence to support them. Based on that standard of review, including plaintiff's failure to describe to the trial court how the documents can be read to reflect that payment, we cannot say that the trial court erred. We therefore affirm on this assignment of error.

In her seventh assignment of error, plaintiff asserts that defendant failed to prove his lost profits with sufficient certainty. We affirm on that assignment without discussion.

Judgment for conversion in amount of $7,767.63 reversed; otherwise affirmed; remanded for entry of amended judgment.

---

[6] Judge Warren, in his partial dissent, would transform defendant's conversion claim into one for trespass to chattels. However, defendant never referred to trespass at trial and makes no such argument on appeal. Whatever the intellectual allure of the conversion *qua* trespass question, the fact remains that no one raised it:

"Appellate courts are limited in their scope of review. Generally, on appeal the case, criminal or civil, should be heard on the same theory upon which it was presented in the court below * * * —except where important considerations of public policy are encountered in the solution of a case before the court." *State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975) (citation omitted).

**WARREN, J.,** concurring in part and dissenting in part.

I agree with all of the majority opinion except for its treatment of the award to defendant of damages for the conversion of his photographic equipment. I agree that he has failed to establish that plaintiff converted that equipment. What the majority refuses to recognize, however, is that the court and the parties did not in fact try a claim for conversion; rather, what they tried under that label was in reality a claim for trespass to chattels. The evidence supports the judgment under that theory, and we should affirm it.

We recently noted that trespass to chattels is the " 'little brother of conversion,' " which applies to interferences with the possession of chattels that are not sufficiently important to be classified as conversion. *Morrow v. First Interstate Bank*, 118 Or App 164, 168, 847 P2d 411, *rev dismissed* 317 Or 580, 858 P2d 448 (1993), *quoting Prosser and Keeton on Torts* 86 (5th ed 1984). That comment is consistent with the Supreme Court's recognition in *Mustola v. Toddy*, 253 Or 658, 664 n 4, 456 P2d 1004 (1969), that there is a strong argument for abolishing the distinction between conversion and other types of interference with personal property, including trespass to chattels. Indeed, in a later case Justice O'Connell, the author of *Mustola*, asserted that the adoption of the balancing test of *Restatement (Second) of Torts* § 222A (1958) essentially achieved that result. In Justice O'Connell's view, the court should treat any actionable interference with a chattel as a trespass, with the measure of damages dependent on the nature and extent of the interference. *Remington v. Landolt*, 273 Or 297, 317-18, 541 P2d 472 (1975) (O'Connell, C. J., concurring).

Defendant labeled his claim "conversion" rather than "trespass to chattels" and has not referred to a trespass theory either at trial or on appeal. However, his allegations, and the evidence at trial, were as relevant to a trespass claim as to a conversion claim. The damages that he sought and that the court awarded were more appropriate to trespass than to conversion.[1] In Oregon a pleader does not plead a

---

[1] The normal measure of damages in a conversion claim is the reasonable market value of the property at the time of the conversion. *Lanz v. Douglas Tool &*

legal theory; a pleader alleges facts. ORCP 18; *Gabel v. Armstrong*, 88 Or 84, 90, 171 P 190 (1918); *Hanna v. Hope*, 86 Or 303, 308-09, 168 P 618 (1917). The court evaluates the facts to determine whether they entitle the pleader to relief on any legal theory. "While a claim for relief may fail to plead a specific theory, it should not be dismissed if it pleads a claim for relief under some theory, *even if it was not the one the plaintiff intended*." *Sheets v. Knight*, 308 Or 220, 232, 779 P2d 1000 (1989) (emphasis supplied). In the same way, an issue that is not in the pleadings will support a judgment if the parties tried it by consent without the necessity of amending the pleadings. ORCP 23 B.

In the circumstances of this case we should treat defendant as having asserted a claim for trespass to chattels in the alternative to the conversion claim. The issues that defendant raised, the evidence that the parties presented, and the damages that the court awarded are all better suited to a trespass claim than to one in conversion. The gist of the tort is the disturbance of defendant's possession of the equipment, and the damages that the court awarded are ones that may flow from that disturbance, including defendant's loss of use of the equipment. *See W. L. Hughson Co. v. Northwestern Nat. Bk.*, 126 Or 43, 47, 268 P 756 (1928).

Treating the claim as one in trespass would not be inconsistent with *Jordan v. Wilhelm*, 95 Or App 528, 770 P2d 74, *rev den* 308 Or 79 (1989), in which the plaintiff based his claim solely on conversion and, we pointed out in a footnote, did not sue for trespass to chattels. 95 Or App at 530 n 1. As a result of the way that the plaintiff brought the case, we decided only the conversion claim. However, in *Jordan* the plaintiff had lost at trial, so that treating the claim as one for trespass to chattels could have led to reversing a judgment that the defendants obtained on the basis of the issues as the plaintiff framed them. Here, treating defendant's conversion

---

*Engineering, Inc.*, 138 Or App 89, 92, 907 P2d 1128 (1995). When the plaintiff regains possession of the converted property before the trial, the measure of damages is the value of the property at the time of the conversion less its value at the time of the return. *See W. L. Hughson Co. v. Northwestern Nat. Bk.*, 126 Or 43, 47, 268 P 756 (1928); *Lee Tung v. Burkhart*, 59 Or 194, 205, 116 P 1066 (1911). The trial court, however, based its damage award not on the value of the property but on defendant's lost profits and loss of use, which are more appropriate to a trespass claim.

claim as including a claim for trespass to chattels could result in affirming a judgment that defendant obtained after a trial in which the legal and factual issues were such that we can be certain that the evidence and the result would have been no different if that had been the express issue.

The majority's decision elevates form over substance and ignores the reality of what happened in this case. For that reason, I dissent from its reversal of the damages on the "conversion" claim.

**EDMONDS, J.,** concurring in part and dissenting in part.

I concur with the majority opinion except in regard to the third assignment of error. In that regard, plaintiff contends, "The trial court erred by awarding motel expenses to [defendant] because such damages constitute an impermissible 'double recovery' by [him]." She explains that after the restraining order was issued prohibiting defendant from residing at the partnership property, he moved to a motel that cost him $45 per night. The trial court awarded judgment against plaintiff in the amount of $33,039, which included an award of $3,375 for the motel expenses. The trial court also awarded plaintiff a judgment in the amount of $10,675 against defendant. The latter amount does not include $5,001, which allegedly represents defendant's share of the expenses for the maintenance of the property after the parties moved out.

On appeal, plaintiff argues that the refusal of the trial court to include the $5,001 in the judgment that defendant owes plaintiff amounts to a "double recovery" when considered in combination with the award to defendant for the motel expenses. She says,

> "The court's award put [defendant] in a better position than if there had been no breach of partnership. If there had been no breach of partnership, [defendant] would have remained at the [partnership property], but he would have been obligated to pay his share of expenses. As a result of the breach of the partnership found by the trial court, [defendant] not only was excused from paying for the [partnership] property, but he also received the benefit of having [plaintiff] pay his expenses for living elsewhere. If this

court does not remand the breach of the partnership issue for a new trial, it should reverse the trial court's award of motel expenses."[1]

In response to plaintiff's assignment of error, the majority reasons:

"In her third assignment of error, plaintiff challenges the award to defendant of his motel expenses during the time after plaintiff evicted him from the house and before he found a new house. Plaintiff argues that that award gives defendant a double recovery, because the court also excused him from any liability for partnership expenses after the entry of the restraining order. Plaintiff does *not* challenge that latter action, nor does she challenge the amount of the award. Because plaintiff presents only the legal question of whether the court's award of damages constitutes a double recovery, we do not need to decide any factual issues and therefore review the issue as a question of law.

"For the motel expenses to be an improper double recovery, they must cover the same loss as the partnership expenses that defendant did not have to pay. Defendant incurred the motel expenses as a direct result of plaintiff's breach of the agreement. It was, thus, proper to award him damages for those expenses. Plaintiff's argument is that defendant was already compensated for his loss by being excused from paying the partnership expenses. However, because plaintiff excluded defendant from the partnership property, he was not able to use it for his residence and had to incur the cost of alternative housing. The evidence suggests that the expenses for the house may have totaled $600 to $700 a month, only half of which was defendant's share, while the cost of the motel was $45 a day. Simply being excused from paying his portion of the expenses of the house, thus, was inadequate to cover all of defendant's damages arising from plaintiff's breach. At least *some* of the award of motel expenses was *not* a double recovery. Because plaintiff seeks only to overturn the award in its

---

[1] In context, plaintiff's requested relief on appeal runs the gamut of asking us to "reverse" some of the trial court's legal rulings and its findings, to remand the case for a calculation of defendant's damages and to "modify" the judgment. However, at least as to the third assignment of error, it is clear that plaintiff is requesting "*de novo*" review of the evidence and the trial court's judgment for the motel expenses.

entirety, not to reduce its amount, we do not need to determine whether any part of it in fact represents a double recovery." (Footnote omitted; emphasis in original.)

As plaintiff points out, our review as to the resolution of the dissolution of partnership issues reflected in the judgments is *de novo*. *Mikkelson v. Conser*, 84 Or App 112, 733 P2d 106, *rev den* 303 Or 483 (1987). In the abstract, a successful assignment of error on appeal as to a particular aspect of a partnership dissolution could influence the ultimate award because the ultimate award is dependent on the sums and offsets that lead to its calculation. In this case, a part of the ultimate award to plaintiff includes the rejection by the trial court of the claim by plaintiff for $5,001 in partnership expenses. As a result, when plaintiff's judgment is offset against defendant's judgment, which includes the motel expenses, plaintiff's "double recovery" argument under her third assignment of error takes form. It is in essence an argument that to award motel expenses to defendant while refusing to reimburse plaintiff for her expenditures on behalf of the partnership that benefitted defendant's interest in the partnership property results in a disproportionate and unfair recovery by defendant. Under those circumstances, plaintiff's assignment of error and her argument under it necessarily encompass the partnership expenses issue in light of the trial court's ultimate rulings.

Additionally, when our standard of review is equitable in nature as it is here, we are to conduct a review of the record and grant relief in a manner that is just and fair to both parties under all the circumstances. ORS 19.415(3); *Haguewood and Haguewood*, 292 Or 197, 202, 638 P2d 1135 (1981). When equitable relief is the gist of an assignment of error as here, the application of appellate rules of procedure should be more relaxed. Plaintiff does not receive "her day in our court" under the majority's "wooden" procedural approach even though the issues of defendant's breach of the partnership agreement and the relative equities of the parties' positions were considered and decided by the trial court. Although plaintiff's assignment of error may be inartfully expressed, it suffices to meet the requirements of ORAP 5.45. It is clearly a request that we review "anew" whether the

award of the motel expenses to defendant is equitable under the circumstances.

I turn to the merits of plaintiff's third assignment of error. In general, a party is not entitled to benefit from another's breach when he is also in breach himself. He who seeks equitable relief must also have acted equitably or performed his part of the bargain. *Hermann v. Churchill*, 235 Or 327, 332, 385 P2d 190 (1963). Thus, the proper measure of relief to which defendant is entitled is the amount of money that will restore him to the position in which he would have been but for the breaches of the partnership agreement by *both* parties.

In this case, defendant breached the partnership agreement before May 1995 by using the partnership property for business purposes. His conduct impaired the ability of plaintiff to use the partnership property for residential purposes, and the trial court ruled that defendant's use constituted a material breach of the parties' partnership agreement. The trial court also ruled that plaintiff breached the partnership agreement in May 1995 by wrongfully ousting defendant from occupancy of the property. The motel expenses, which are a part of the subject of plaintiff's assignment of error, were incurred after defendant was evicted from the premises and until August of 1995. The maintenance expenses for the partnership property were incurred from June 1995 through February 1996, when neither party occupied the partnership property. They include expenditures by plaintiff for mortgage obligations, utilities, insurance, repairs, maintenance, taxes, and the cost of photographs and an appraisal for the purpose of offering the property for sale.[2]

The trial court based its ruling to deny plaintiff credit for the monies she had expended on behalf of defendant on the premise that the effect of plaintiff's breach was to relieve defendant of the obligation to pay his share of those

---

[2] The trial court ordered the partnership property sold. It said, "I am giving [plaintiff] the responsibility of listing and selling the property, as I have very little faith [that defendant] would ever get it done. Implicit in this is a ruling that the material breaches by both parties take away any entitlement of either to invoke the buy-out provisions of the [partnership agreement]."

expenses. That premise is erroneous. The expenses were paid by plaintiff to preserve the partnership property or to sell it after both parties had breached the partnership agreement. Consequently, equity requires that both share in the expenses equally. Defendant is not entitled to an award that gives him a benefit from his failure to perform a contractual obligation that coexisted with plaintiff's obligations under the partnership agreement. *Campbell v. Karb*, 80 Or App 220, 224, 721 P2d 881 (1986). *See also Restatement (Second) of Contracts*, § 335 (1979).[3]

For the above reasons, the majority errs. I would include the $3,375 in motel expenses in the amounts owed by plaintiff to defendant as part of the partnership dissolution calculation, but I would offset the $3,375 on plaintiff's side of the ledger as she requests. Some portions of the $5,001 expenditures were challenged by defendant at trial. He contended that if he had been allowed to live in the house, some of the maintenance and repair expenses would not have been incurred. Defendant's share of plaintiff's expenditures for those categories as claimed by her is $1,060. Because the uncontested, fixed costs of preserving the partnership property exceeded $3,375, plaintiff's requested relief is equitable.

---

[3] *Restatement (Second) of Contracts* § 335 (1979) provides:

"If the defendant's breach of contract saves expense to the plaintiff by discharging his duty of rendering a performance in return or excusing him from the performance of a condition precedent, the amount of this saving is deducted from the damages that otherwise be recoverable."