Argued and submitted September 8, 2000, affirmed December 26, 2001

George A. RIZO,
*Appellant,*

*v.*

U-LANE-O CREDIT UNION,
an Oregon corporation,
*Respondent.*

12-99-03417; A108956

37 P3d 220

Steve C. Baldwin argued the cause for appellant. On the opening brief were Daniel J. Drazan and Watkinson Laird Rubenstein Lashway & Baldwin, P.C. On the reply brief was Steve C. Baldwin.

Kimberley A. Hanks argued the cause for respondent. With her on the brief was Farleigh, Wada & Witt, P.C.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* De Muniz, J., resigned.

## WOLLHEIM, J.

Plaintiff seeks review of a judgment in favor of defendant U-Lane-O Credit Union on plaintiff's claims for breach of contract and conversion. We review for errors of law, *Tifft v. Stevens*, 162 Or App 62, 66, 987 P2d 1 (1999), *rev den* 330 Or 332 (2000); *Fogh v. McRill*, 153 Or App 159, 167, 956 P2d 236, *rev den* 327 Or 431 (1998), and affirm.

The case was tried to the court on stipulated facts. Plaintiff had a Visa account at defendant credit union on which his wife, Marion, was an authorized signer. Plaintiff also had a savings account at defendant credit union that was solely in his own name. In May 1998, Marion sent defendant a request for a wire transfer of a $3,000 cash advance from the Visa account, to be sent to her account at another bank. In accordance with that request, defendant transferred $3,000 to Marion's account. According to defendant's chief financial officer, because of its auditing procedures, it "does not process wire transfers directly from a VISA account; rather, the cash advance is credited to the savings account associated with the VISA account and then transferred from the savings account to the destinations requested by the authorized signer on the VISA account." Therefore, in order to transfer the cash advance to Marion's bank as requested, defendant debited the Visa account $3,010 (the amount requested plus a wire transfer fee), then transferred $3,000 of that amount temporarily into plaintiff's savings account before transferring it into Marion's account as she requested. Plaintiff and Marion were subsequently divorced, and plaintiff ultimately was obliged to pay the $3,010 Visa debt that resulted from Marion's wire transfer.

Plaintiff initiated this action for breach of contract and conversion. The gravamen of plaintiff's breach of contract claim was that defendant breached its account agreement with plaintiff by withdrawing the $3,010 from his savings account after having first deposited it there, because the account agreement required plaintiff's authorization for withdrawals from that account. The gravamen of plaintiff's conversion claim was that defendant converted the $3,010 that it had deposited in his savings account by withdrawing it

and delivering it to Marion. On both claims, plaintiff sought as damages the $3,010 plus interest.

The trial court entered judgment in defendant's favor on both of plaintiff's claims. On the contract claim, the trial court found first that defendant's procedure of passing the funds debited from the Visa account through the savings account before transferring them to the destination bank was not a violation of the account agreement. Alternatively, the trial court concluded that plaintiff had failed to prove the damages element of his claim. On the conversion claim, the trial court found that plaintiff's claim failed because he did not have the right to immediate possession of the $3,010 when defendant transferred it from the savings account to Marion's account.

On appeal, plaintiff argues that the trial court erred in rejecting each of his claims. We turn first to his arguments concerning the breach of contract claim. The parties do not dispute that proof of damages is an essential element of a breach of contract action. *See, e.g., Moini v. Hewes*, 93 Or App 598, 602-03, 763 P2d 414, *rev den* 307 Or 245 (1988). They do dispute, however, whether plaintiff established that he suffered any damages as a result of defendant's alleged breach of its account agreement with plaintiff. We need not decide here whether plaintiff is correct that defendant breached the account agreement by transferring the Visa account cash advance into the savings account before transferring it on to Marion's account, because we agree with defendant that, even assuming that defendant breached the agreement, plaintiff suffered no damages as a result of the breach.

■ Plaintiff argues that defendant's action in transferring the money through his savings account caused him to suffer damages because he ultimately was required to pay the $3,010 liability on the Visa account. He argues that "[t]his $3,010 liability would not and could not have been incurred but for [defendant's] unauthorized withdrawal from [plaintiff's] Savings Account." Plaintiff's own argument defeats that assertion. At another point in his brief, plaintiff notes that nothing prevented defendant from "wir[ing] the funds directly from the Visa Account to their destination." Plaintiff also does not dispute that Marion was an authorized

signer on the Visa account, and therefore had every right to request the wire transfer of funds from that account. What plaintiff fails to recognize is the logical conclusion that must be drawn from those facts: Plaintiff's liability for the debit to the Visa account was *not caused* by defendant placing the funds briefly in his savings account before transferring them to Marion. Put another way, plaintiff would have been liable on the Visa account for Marion's authorized withdrawal of the funds regardless of whether defendant had transferred those funds directly to Marion or had first passed them through plaintiff's savings account. The trial court correctly rejected plaintiff's claim for breach of contract, because the alleged damages were not caused by the alleged breach.

■ We turn to the conversion claim. Plaintiff asserts that the trial court erred in rejecting that claim, arguing that, regardless of whether Marion was an authorized signer on the Visa account, "once the funds were transferred into [plaintiff's] Savings Account they became [plaintiff's] property." Again, we disagree. In *Mustola v. Toddy*, 253 Or 658, 663-64, 456 P2d 1004 (1969), the court accepted the following formulation of the tort of conversion, taken from the *Restatement (Second) of Torts* § 222 (1965):

"(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

"(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a) the extent and duration of the actor's exercise of dominion or control;

"(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c) the actor's good faith;

"(d) the extent and duration of the resulting interference with the other's right of control;

"(e) the harm done to the chattel;

"(f) the inconvenience and expense caused to the other."

*See also Fogh*, 153 Or App at 166-67 (applying *Restatement* test for conversion).

Implicit in plaintiff's argument is an assertion that, the moment defendant transferred the Visa account funds requested by Marion into plaintiff's savings account, plaintiff gained a right to control those funds superior to the rights of all others, and any exercise of dominion or control over those funds either by defendant or by Marion seriously interfered with the right to control that plaintiff had gained by the transfer. Plaintiff's argument fails for several reasons.

We assume, for purposes of this discussion, that plaintiff is correct that defendant's pass-through of the funds into the savings account before transferring them to Marion's bank was not authorized. It simply does not follow that a bank's erroneous placement of funds into a customer's account gives the customer an unfettered right to exercise dominion and control over those funds, superior to the rights of any others.[1]

The additional fact that plaintiff ultimately was responsible for the debt to the Visa account from which the fund originated also did not give him an unfettered right to exercise dominion and control over the funds. Once defendant undertook to honor Marion's authorized request for the wire transfer, it had an obligation to deliver the funds to *Marion,* not to plaintiff. Even though plaintiff ultimately was responsible for the debt incurred by Marion's wire transfer, that did not mean either that Marion was not entitled to receive the funds or that defendant had an ownership interest in those funds that was superior to Marion's interest.

In short, plaintiff's claim fails under the first section of the *Restatement* description of conversion—interference that "seriously interferes with the right of another to control" the chattel—because plaintiff did not have the right to control the funds in question. Moreover, even if we were to

---

[1] Plaintiff cites no authority for his implicit proposition to that effect, and we are aware of none.

accept that either the brief, unauthorized presence of the funds in plaintiff's savings account or his ultimate responsibility for the debt created by the withdrawal of the funds from the Visa account gave him some sort of claim on the funds, the fact remains that *Marion* nonetheless had a right to receive the funds, in light of her authorized wire transfer request. Section 234 of the *Restatement* is instructive and provides that "[a] bailee, agent, or servant who makes an unauthorized delivery of a chattel is subject to liability for conversion to his bailor, principal, or master *unless he delivers to one who is entitled to immediate possession of the chattel*." (Emphasis added.) Comment d following that section of the *Restatement* indicates:

> "The bailee, agent, or servant is not liable when he delivers the chattel to one entitled to immediate possession of it, even though he delivers in defiance of the orders of the bailor, principal, or master. In such a case no tort has been committed, since possession of the chattel has merely been given to one who has the legal right to it."

In sum, because Marion was an authorized signer on the Visa account, she had a right to request the transfer of the funds in question. When defendant honored Marion's request for a wire transfer of the funds, Marion had a legal right to possession of those funds. Given that Marion was legally entitled to receive the funds, defendant did not commit the tort of conversion by delivering those funds to her, regardless of whether the funds had been temporarily placed into an account that they should not have been in, and despite the fact that plaintiff ultimately was responsible for the debt created by the transfer of the funds.

The trial court correctly entered judgment in defendant's favor on plaintiff's claims for breach of contract and conversion.

Affirmed.